[Civ. No. 3865. Third Appellate District.—February 7, 1930.]

CITY OF TURLOCK (a Municipal Corporation), Respondent, v. CLARENCE BRISTOW et al., Defendants; A. N. CROW et al., Appellants.

William N. Graybiel for Appellants.

James C. Nichols for Respondent.

THOMPSON (R. L.), J.—This is an appeal from a decree awarding mandatory relief from a public nuisance caused by the pollution of the water of an irrigation ditch which extends through a portion of the City of Turlock.

For more than twenty years the defendants held an easement in the use of water for irrigation purposes which flowed in a ditch extending through the westerly portion of the City of Turlock. Originally this ditch which was constructed with dirt embankments, was entirely unenclosed by culverts or conduits. The ditch was ten or fifteen feet in width and several feet in depth. It extended through a somewhat populous portion of the city for a distance of sixteen blocks. At points where it intersected or traversed streets the city authorities at great cost constructed concrete culverts, installed thirty-inch waterpipes and inverted siphons beneath the pavements. Nevertheless, this ditch for nearly one-half the distance traversed within the city limits remained open and unprotected. These uncovered portions became overgrown with vegetation and obstructed by an accumulation of debris so that the water was polluted and unsanitary.

The complaint alleged facts constituting a public nuisance and prayed for abatement thereof. The answer controverted these allegations and a cross-complaint was filed setting up a claim on the part of the defendants to prescriptive rights to the use of the ditch for irrigation purposes and affirmatively charged the City of Turlock with wrongfully installing concrete culverts, conduits and siphons so as to obstruct and diminish the flow of water to which they were entitled. From this interference with their alleged prescriptive rights the defendants prayed for equitable relief.

Upon trial of the cause the court found that the ditch was maintained by the defendants along the open portions

thereof within the city limits of Turlock in such a manner as to permit the accumulation of foul and stagnant water, refuse matter, filth and garbage which became a breeding place for typhoid and other disease germs and permeated the air with noxious, unwholesome and offensive vapors and odors, rendering the ditch unsanitary, causing the neighborhood to become unhealthful and destroying the comfort and enjoyment of the homes and property of the citizens of that vicinity. The court further found that the concrete culverts, pipe system and siphons which were installed by the city were not constructed so as to obstruct or reduce the flow of water in the ditch, but upon the contrary, that "said culverts are large enough to carry all water that has been carried through said ditch for the past ten years," and that the defendants were not damaged thereby. The court thereupon ordered that the defendants be "enjoined and restrained from conveying water through the said last above described portion of said ditch within the corporate limits of the City of Turlock unless and until all the open and uncovered portions thereof lying north of the said Tidewater-Southern Railroad tracks on Castor Street in said city are covered, tiled or piped in a substantial and permanent manner in concrete, iron or other durable and permanent substance so as to effectively prevent the escape or leakage therefrom of water or odors." These findings are amply supported by the evidence.

There can be little doubt the irrigation ditch, complained of in this action, maintained in the manner in which the record discloses it to have been operated, constitutes a nuisance subject to abatement. Since 1906 the defendants availed themselves of the easement in the use of this ditch to periodically convey water to their respective lands for irrigation purposes. It may be conceded they thereby acquired prescriptive rights to the lawful use of the ditch and water flowing therein. The ditch traversed the westerly portion of the City of Turlock in the vicinity of two school buildings, along and across streets and through city blocks, a distance of some 6,000 feet. This portion of the city is now quite thickly populated. As the city developed it improved this waterway in places where it was most required, by constructing culverts, installing concrete pipes, placing siphons beneath the crossings and paving the streets.

After thus inclosing the ditch at intervals, nearly one-half of it still remained unprotected within the city limits. Along these uninclosed portions of the ditch vegetation and debris were permitted to accumulate so as to become a menace to health, comfort and the reasonable enjoyment of home life among citizens who live in that vicinity and to those who have occasion to visit the neighborhood of that ditch. While the record does not disclose an extremely offensive condition of this waterway, there is ample evidence upon which to support the findings of the court to the effect that a nuisance was permitted to develop and exist by those in control thereof, according to the definition of a nuisance as that term is defined in section 3479 of the Civil Code.

It would be an arduous and useless task to select evidence which is scattered throughout a somewhat lengthy record to demonstrate the existence of this nuisance. The city engineer, a physician who was also the health officer of Turlock, and other witnesses furnish satisfactory proof of the presence of large quantities of bamboo, willows, rank grass, weeds and vegetation which were permitted to grow and remain in dense masses within the ditch and along its borders, obstructing the flow of the ordinarily sluggish stream. The grass and vegetation were permitted to lie in masses along the borders of the stream or to decay upon its banks, creating danger of fire, menacing the health of citizens by fostering breeding places for mosquitoes, bacteria, colon and typhoid bacilli and creating unsanitary and offensive odors. The grade of this ditch was not uniform. Holes were dug in the bed of the stream and miniature pools formed where the water became stagnant and covered with a thick coating of green scum in which dead frogs and fish remained to decay. The presence of miasma and noxious effluvium resulted. The stream also became the dumping ground for tin cans, old boilers, discarded tires and debris of all sorts, creating an unsightly, unhealthful and unwholesome situation. Occasionally the banks washed out and the adjoining land was flooded. Moreover, the ditch became the playground for children who, during periods of high water, were in danger of being drowned. This condition unquestionably constitutes a nuisance. (*McCarthy* v. *Gaston Ridge Mill Co.*, 144 Cal. 542 [78 Pac. 7]; 20 R. C. L. 443, secs. 58-61; 20 Cal. Jur. 294, sec. 29.)  ▉  But appellants assert that the

evidence fails to prove they created this situation. It was, however, a continuing nuisance which they suffered to exist. (20 Cal. Jur. 271, sec. 9.) Every successive owner of property who neglects to abate a continuing nuisance upon, or in the use of such property, created by the former owner, is liable therefor in the same manner as the one who first created it. (Sec. 3483, Civ. Code.) It was the duty of the defendants to maintain the ditch in a reasonably sanitary condition. ■ One who owns an easement for the continuous use of water which is conveyed to his premises through an irrigation ditch may be enjoined from using it except upon condition that he shall maintain it free from an existing state which amounts to a public nuisance. This is precisely the effect of the court's mandate in the present case, which seems to accord with equitable principles.

■ The evidence is also sufficient to show that the *entire neighborhood* through which the ditch ran within the city limits was injuriously affected by the unsanitary and dangerous condition of this irrigation ditch and that it therefore constituted a *public* nuisance as that term is defined in section 3480 of the Civil Code. ■ The City of Turlock was clearly authorized to maintain this action to abate the public nuisance. (Sec. 3494, Civ. Code; *San Francisco* v. *Buckman*, 111 Cal. 25 [43 Pac. 396]; 20 Cal. Jur. 307, sec. 38.) Indeed, where the existing condition clearly constitutes a public nuisance which affects the health or sanitation of a city, it may be abated by the municipality under its police powers without liability on its part and independently of its equitable remedies. (20 R. C. L. 487, secs. 100, 101; 2 Wood on Nuisances, 3d ed., 973, sec. 743; *McMahon* v. *Telluride*, 79 Colo. 281 [46 A. L. R. 358, note, 244 Pac. 1017].)

■ The appellants contend that the record is devoid of evidence that the defendants were served with notice to abate the nuisance, and that such notice is a prerequisite to the instituting of this action for abatement. This was a continuing, visible, public nuisance which was permitted by the defendants to exist for many years. Under such circumstances they will be deemed to have had knowledge of the nuisance and notice thereof. (46 C. J. 743, sec. 325.) The evidence, however, does show that complaints had been frequently made to the city authorities regarding the unsanitary condition of this stream; that protests were given

to some of the defendants and that notices to abate the nuisance were mailed to the defendants before the action was commenced. No specific notice to abate the nuisance in this case was necessary.

■ It is claimed the court erred in failing to adopt findings upon the claim alleged in the cross-complaint that the defendants owned prescriptive rights to the use of the water flowing through this irrigation ditch and that these prescriptive rights are a valid defense to the charge of maintaining a public nuisance. This, however, was an immaterial issue, which required no finding. Neither prescriptive rights, laches nor the statute of limitations is a defense against the maintenance of a public nuisance. In the case of *Strong* v. *Sullivan,* 180 Cal. 331, 334 [4 A. L. R. 343, 181 Pac. 59], it is said: "No lapse of time can legalize a public nuisance, and a prescriptive right cannot be maintained against a public nuisance." Nor may the maintenance of a public nuisance be defended on the ground of laches or the statute of limitations. (Sec. 3490, Civ. Code; *Cloverdale* v. *Smith,* 128 Cal. 230 [60 Pac. 851]; *Ex parte Taylor,* 87 Cal. 91 [25 Pac. 258]; 46 C. J. 751, sec. 349; *Brown* v. *Wendt,* 103 Cal. 236 [37 Pac. 149]; *City of Santa Ana* v. *Santa Ana Valley Irr. Co.,* 163 Cal. 211 [124 Pac. 847]; *Pennsylvania Ry. Co.* v. *Sagamore Coal Co.,* 281 Pa. 233 [39 A. L. R. 882, 126 Atl. 386].) The foregoing rule respecting the defense based upon the grounds of prescriptive rights, laches or the statute of limitations is equally applicable even though the defendants may have enjoyed these rights before the City of Turlock was incorporated. Prescriptive rights to the use of water in an open irrigation ditch extending through the boundaries of a city must be enjoyed with due regard and subject to the superior regulatory rights of the municipality to protect its citizens against the maintenance of a public nuisance.

■ A trial by jury was properly denied. The issues of this cause were all equitable, involving injunctive relief only. The defendants were therefore not entitled to a jury trial. (15 Cal. Jur. 342; 1 Wood on Nuisances, 3d ed., p. 45, sec. 22; *People* v. *McCaddon,* 48 Cal. App. 790 [192 Pac. 325].) In Wood's text on Nuisances, *supra,* the author says: "As to what constitutes a nuisance, as well as the question of convenience, are questions to be determined

by the court, not by a jury; also (the question as to) whether the facts, if proved in a given case under all the circumstances, produce such result as amounts to a nuisance.'' In the case of *People* v. *McCaddon, supra,* which was a suit to abate a public nuisance, the court said: ''This being an action for an injunction, neither the Constitution nor the statute requires the submission of the issues to a jury. It is not error to deny a jury in any case where such right was not granted at common law.'' In *McCarthy* v. *Gaston Ridge Mill Co., supra,* it is said: ''The prevention or abatement of a nuisance is to be accomplished by means of an injunction either prohibitive or mandatory, and an action therefor is within the equitable jurisdiction of the court, and is to be governed by the principles prevailing in that jurisdiction. (*Sullivan* v. *Royer,* 72 Cal. 248 [1 Am. St. Rep. 51, 13 Pac. 655]; *Richardson* v. *City of Eureka,* 110 Cal. 441 [42 Pac. 965].) The Constitution does not give to a party the right to have the issues in such action tried by a jury, nor is the action within those in which the legislature has authorized a jury trial.''

The judgment is affirmed.

Finch, P. J., and Plummer, J., concurred.

A petition for a rehearing of this cause was denied by the District Court of Appeal on March 8, 1930, and a petition by appellants to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on April 7, 1930.

All the Justices present concurred.