[Civ. No. 3640.   Fourth Dist.   June 26, 1947.]

C. F. BOARTS et al., Appellants, v. THE IMPERIAL IRRIGATION DISTRICT (a Public Corporation), Respondent.

Whitelaw & Whitelaw for Appellants.

Harry W. Horton and George R. Kirk for Respondent.

MARKS, J.—Plaintiffs brought this action to abate an alleged nuisance consisting of weeds growing on the banks of a drainage ditch owned by defendant, the seeds of which were blown by the prevailing winds onto plaintiffs' property causing damage to crops. They also sought recovery of damages alleged to have been suffered by them. Judgment was rendered for defendant and this appeal followed.

Plaintiffs were the owners of 80 acres of land near Westmoreland in Imperial County. A public road 50 feet wide ran north and south adjoining and east of the west line of their property. In July of 1926, they conveyed to defendant a right of way 30 feet wide along, adjoining and east of this roadway, ''for the construction, maintenance and/or use of a surface drain ditch, telephone and/or electric power line or lines, as now exist or as may be constructed or enlarged.''

The ditch constructed on this right of way was but part of a long drainage canal. It extended an unknown distance south of plaintiffs' property and about two and one-half miles

north to a river. The purpose of the ditch was to carry off unused irrigating water from the lands of the neighboring owners. Plaintiffs maintained a drain leading from their land to this drainage canal to carry off such water.

The evidence indicates that there were about 1,200 miles of such drainage canals in the Imperial Irrigation District all constructed and maintained in substantially the same manner as the one involved here. In addition there were about 1,800 miles of irrigation canals. The evidence also shows that the defendant kept the bottom of these canals free of weeds and other growth to permit the unobstructed flow of water, but did not keep the banks clean; that it was expending between one hundred and twenty-five, and one hundred and thirty thousand dollars annually on this work; that to clean the banks as well as the waterways would increase such expenditures to at least three times that amount; that the defendant has neither the employees, the equipment, nor the money to undertake the larger task.

The evidence shows there were arrow weed and other such natural growth on the banks of the canal which were permitted to seed; that the prevailing winds were from the west which carried the seeds onto plaintiffs' property where they germinated. It is not suggested that these weeds were planted by defendant or that they were anything but a natural growth. They were watered by seepage from plaintiffs' land during irrigations.

We are cited to no state law or county ordinance which would require an owner to destroy or stop the growth on his property of such weeds as we have here. The sole question for decision is whether or not, in the absence of statute or ordinance, an owner of property owes a duty to his neighbor of preventing seeds from weeds naturally growing on his land from maturing and being blown by the wind onto the neighbor's land. We have been cited to no California case deciding this question.

A general rule on the subject is stated in 1 American Jurisprudence at page 541, as follows:

"Nor is there any liability to an adjoining owner for the spread of noxious vegetation, such as thistles, which, being a natural growth of the soil, the property owner is under no duty to cut."

The earliest case on the question, in point of time, to which we have been cited, or which our research has disclosed, is

*Giles* v. *Walker*, L.R. 24 Queen's Bench Div. 656. This case discloses that the defendant bought some timber land and cut the trees; that no thistles were growing on the land when he bought it; that it was covered by thistles after the trees were removed. Defendant did not cut the thistles and the wind carried the seed onto plaintiff's land where they rooted and grew. This furnished the basis for his action for damages. The court held that "there can be no duty as between adjoining occupiers to cut the thistles which are the natural growth of the soil."

The opinion in the English case was quoted and followed in the case of *Langer* v. *Goode*, 21 N.D. 462 [131 N.W. 258, Ann.Cas. 1913C 1181], which was an action in which the plaintiff sought damages against defendant for permitting mustard to grow and mature on his property. There was a state law regulating the growth of mustard but it was held that as the board of county commissioners of the county in which the properties were located had not taken the necessary steps to make it effective in that county, the statute could not control the decision. It was further held that independent of statute there was no duty resting on the defendant to destroy the natural growth of mustard and thus prevent the seeds from being blown onto the plaintiff's property.

The cases of *St. Louis S. W. Ry. Co. of Texas* v. *Terhune*, 81 S.W. 74, and *Vance* v. *Southern Kansas Ry. of Texas*, 152 S.W. 743, decided by the Court of Civil Appeals of Texas, involved similar situations. The case first cited was an action for damages resulting from the railway company permitting Johnson grass to grow along its right of way so that the seed was carried onto the adjoining property; and the other was to recover damages by reason of the railway company permitting Russian thistles to grow on its right of way from which seed spread to adjoining land.

The holdings in both cases are illustrated by the following quotation from the opinion in the Vance case:

"As we understand the law, there was no cause of action in favor of contiguous landowners against a railroad permitting Russian thistles to grow and go to seed on its right of way prior to the passage of the act of 1901. The lawful use of one's own may cause damage to another, and yet no legal wrong has been done or liability incurred. The mere failure to destroy thistles and prevent their going to seed within itself is not actionable, independent of the statute. Especially is this true if the thistle is indigenous to the soil.

In order to make a railroad liable, there must have been some independent or active negligence on its part in conveying the seed upon the adjacent land to make it liable.''

A somewhat similar line of reasoning appears and was approved in the case of *Bliss* v. *Ball,* 99 Mass. 597. The plaintiff maintained that the shade of trees on his neighbor's property made his house damp and unhealthy to his damage. The court disposed of plaintiff's argument as follows: ''As against adjoining proprietors, the owner of a lot may plant shade trees upon it or cover it with a thick forest, and the injury done to them by the mere shade of the trees is *damnum absque injuria.* It is no violation of their property rights.''

The case of *Stewart* v. *Birchfield,* 15 Cal.App. 378 [114 P. 999], may, by analogy, be important here. Plaintiff and defendant were adjoining landowners in Imperial County. Defendant cleared his land of brush and left it uncultivated and unirrigated so that the prevailing winds carried sand from it onto plaintiff's property where it was deposited in mounds. Plaintiff brought suit for damages, a demurrer to his complaint was sustained and a judgment of dismissal entered. In affirming the judgment it was said:

''If the defendant had the right to remove brush or trees growing upon his property, which right he undoubtedly possessed as an incident to the ownership of the ground, then, unless he was guilty of some negligent act while removing the same, he would not be responsible in damages to plaintiff. He had the right not only to clear his ground, but to leave it unirrigated, if he saw fit, thereafter, even though his failure to so irrigate it might have produced the damage of which plaintiff complains. 'Every man may use his own land for all lawful purposes to which such lands are usually applied, without being answerable for the consequences, provided he exercises ordinary care and skill to prevent any unnecessary injury to the adjacent land owner. It is not, therefore, necessarily negligence on the part of a land owner to make a use of his land which inevitably produces loss to his neighbor; for as he may willfully adopt such a course, and yet not be a wrongdoer, much less is he liable for unintentionally doing that which he has a right to do intentionally.' (Shearman & Redfield on Negligence, Sec. 700.)''

Plaintiffs rely on such cases as *McIntosh* v. *Brimmer,* 68 Cal.App. 770 [230 P. 203], and *City of Turlock* v. *Bristow,*

103 Cal.App. 750 [284 P. 962], to sustain their position. These cases are easily distinguishable from the instant case.

In the McIntosh case the defendant brought several thousand chickens onto his small place. Those chickens scratched in the dry dirt sending clouds of dust, some of it polluted, onto the vineyard of plaintiff causing him loss. It was held that this constituted a private nuisance which was ordered abated and plaintiff was awarded his damages. This is in accordance with the general rule stated in 39 American Jurisprudence 343, as follows: ''A person who brings on his land anything that was not naturally there, and that is likely to do mischief if it escapes, must keep it in at his peril, and if he does not do so, is prima facie liable for all the damage which is the natural consequence of its escape.''

*City of Turlock* v. *Bristow, supra,* involved an open ditch belonging to defendant which ran through the city of Turlock. The water became so polluted that it was dangerous to the public health. The right to abate such a public nuisance cannot be questioned.

In the case before us nothing was brought onto the land of defendant. The weeds were a natural growth. The wind carried the seeds to plaintiffs' property. No negligence of defendant appears and no public nuisance dangerous to the public safety, health, or welfare was proved. As it seems to be established by the cases we have cited that no duty rested on defendant to cut or destroy the weeds, plaintiffs cannot recover.

The judgment is affirmed.

Barnard, P. J., and Griffin, J., concurred.

Appellants' petition for a hearing by the Supreme Court was denied August 21, 1947.