[Civ. No. 14534. Fourth Dist., Div. One. Mar. 24, 1977.]

PHYLLIS WEBSTER, Plaintiff and Appellant, v.
SOUTHERN CALIFORNIA FIRST NATIONAL BANK,
Defendant and Respondent.

410

**COUNSEL**

Williams & Black and Bernhard E. Bihr for Plaintiff and Appellant.

Procopio, Cory, Hargreaves & Savitch and Todd E. Leigh for Defendant and Respondent.

## OPINION

AULT, J.—Plaintiff, the assignee of a creditor of Beautiful Ed's, a corporate owner of a bar and restaurant in Coronado known as Trader Ed's, appeals from a judgment of dismissal entered after the trial court had granted a motion for summary judgment in favor of defendant Southern California First National Bank (the Bank). We conclude it was error to grant the motion for summary judgment and reverse the judgment of dismissal.

Beautiful Ed's, Inc., through Edgar J. and Margaret L. Kunkel, its president and vice-president, sold its only asset, the bar and restaurant together with the on-sale general liquor license issued for the premises, to The Brigantine, a corporation, for $35,000. The escrow was placed with the defendant Bank. The matter was handled as a bulk transfer with a scheduled closing date of April 27, 1973.

In accordance with the requirements of Business and Professions Code section 24074 the Bank was directed by the escrow instructions to pay out of the purchase price the claims of bona fide creditors of the licensee who filed their claims in the escrow and, if the purchase price was insufficient to pay the claims in full, to distribute the funds as follows:

"First, to the payment of claims for wages, salaries, or fringe benefits of employees of the seller or transferor earned or accruing within ninety (90) days prior to the sale, transfer, or opening of an escrow for the sale thereof;

"Second, to the payment of claims of secured creditors to the extent of the proceeds which arise from the sale of the security;

"Third, to the United States for claims based on income or withholding taxes; and thereafter for claims based on any tax other than taxes specified in Section 24049;

"Fourth, to the payment of claims on mechanics' liens;

"Fifth, to the payment of escrow fees and the payment of claims for prevailing brokerage fees for services rendered and claims for reasonable attorney's fees for services rendered;

"Sixth, to the payment of claims for goods sold and delivered to the transferor for resale at his license premises;

"Seventh, to the payment of all other claims. The last category of creditors for whom there are not sufficient assets available for the payment of the claim in full, shall be paid pro rata."

On March 29, 1973, the Bank received an envelope containing a handwritten note and copies of three promissory notes totaling $14,000. The promissory notes were payable on demand, executed in favor of Michael Migliore, plaintiff's assignor, by Mr. and Mrs. Kunkel as president and vice-president of Beautiful Ed's. The handwritten note bore the signature of Mrs. Kunkel and stated:

"Mrs. Horner—

"These will be the last notes to be paid—after all Jobbers and Taxes. And I will pick up the check if that is all right so I can have the notes canceles [*sic*]. If you need to talk to me please call my house & the message will get to me—Mrs. Kunkel."

On April 3, 1973, Lewis and Patterson, two stockholders of Beautiful Ed's, filed a lawsuit naming that corporation, the Kunkels, and the Bank as defendants and seeking the rescission of their stock purchases, return of their money, and a declaration their claim had priority over other creditor claims in the escrow. The Bank was immediately served with process and with notice of motion for a preliminary injunction.

On April 17 the Bank was enjoined in the Lewis and Patterson action from paying any money out of the escrow except as necessary to comply with section 24049 of the Business and Professions Code and to pay taxes, rent, broker's commission and escrow costs. On June 27 the Bank was served with a modification of the order specifically naming the persons or agencies to be paid under the earlier order.

Finally, on July 24, the Bank received another court order in the Lewis and Patterson action directing it to pay specified claims out of the escrow which did not include the Migliore notes, and then to pay the balance of the funds in the escrow to the attorneys for Lewis and Patterson to await the further order of the court. The court also ordered that when the funds had been disbursed from the escrow in accordance with its direction, the Bank would be dismissed from the action with prejudice.

On July 26 the Bank closed the escrow. It had never informed the court of the Migliore notes and had never informed Migliore of the Lewis and Patterson action or the injunction.

Thereafter, as the assignee of Michael Migliore, plaintiff filed this action to recover $14,000 plus interest. She named as defendants the Bank, as escrow holder, and the parties to the escrow: Beautiful Ed's, Inc., the seller; Edgar J. Kunkel and Margaret L. Kunkel as president and vice-president of the seller; and The Brigantine, a corporation, the buyer. On the theory that Migliore was a creditor-beneficiary of the escrow agreement, plaintiff charged the Bank with breach of contract, negligence, conversion and violation of the bulk transfer laws (Cal. U. Com. Code, § 6101 et seq. and Civ. Code, § 3440.1) based solely on the Bank's failure to pay the Migliore notes. Defaults were entered against Beautiful Ed's, Inc. and the Kunkels.[1]

Since the complaint was unverified the Bank answered by general denial and by an affirmative defense pled as follows: "All acts and conduct of defendant in connection with said escrow were and are authorized and required by reason of the proceedings, rulings and orders issued with regard to this answering defendant in that certain litigation entitled 'Charles Lewis and Donald E. Patterson, plaintiffs, v. Edgar J. Kunkel, et al' being action numbered 341125 filed in the above entitled court."

After answering part of the interrogatories and requests for admissions submitted by plaintiff, the Bank (on the same day it filed its partial answers) moved for summary judgment on the ground the action had no merit and presented no triable issue of fact. It based its motion on the pleadings, files and records of the action, the declaration of its escrow officer, Virginia Horner,[2] and the pleadings, files and records contained in the Lewis and Patterson case concerning which it asked the court to take judicial notice. Its memorandum of points and authorities in support of the motion relied solely on the fact the Bank had dispersed the fund specifically as directed by the court and could not have paid the claim of plaintiff's assignor during the escrow or thereafter "without being in direct violation of court orders." The concluding paragraph of its memorandum read: "It is inherently unreasonable to impose liability on the bank for doing exactly what it was ordered by this court to do. Accordingly, it is submitted that no triable issues exist, that the motion for summary judgment should be granted, . . ."

[1]The record does not indicate the disposition, if any, as to The Brigantine.

[2]The declaration consists entirely of a description of the various documents and orders received by the Bank in the Lewis and Patterson action, copies of which were attached as exhibits.

.Plaintiff opposed the motion for summary judgment and moved simultaneously for leave to file an amended complaint alleging fraud and fraudulent concealment claiming the Bank had failed to disclose the Migliore notes to the court in the Lewis and Patterson action and had failed to notify Migliore of that litigation and the injunction. (See Bus. & Prof. Code, § 24074.1.) She also moved to compel further and more complete answers to the interrogatories she had submitted to the Bank. In opposition to the motion for summary judgment she filed the declaration of her attorney which stated he had made written demand on the Bank concerning the Migliore notes on July 5 and had been told at least two weeks before that date by a member of the Bank's escrow department that the department was aware of his client's claim and that it would be processed in the usual manner. Documents attached to the declaration showed the Bank claimed it had not received the July 5 demand until July 31, five days after the escrow had closed.

On December 11, 1974, the trial court granted the Bank's motion for summary judgment, then denied as moot plaintiff's motions to amend her complaint and to compel further answers to interrogatories.

Business and Professions Code section 24074 requires an escrow when any transfer of a liquor license involves a purchase price or considera-tion. The section provides for the payment of claims of bona fide creditors of the licensee who file claims in the escrow and sets up the priority in which such claims are to be paid.[3] ■ It is well established that the section was designed to protect not only the buyer and seller of a liquor license but also creditors of the seller (*Grover Escrow Corp. v. Gole,* 71 Cal.2d 61, 64-65 [77 Cal.Rptr. 21; 453 P.2d 461]; *Cohn v. Gramercy Escrow Co.,* 65 Cal.App.3d 884, 892 [135 Cal.Rptr. 688]). ■ The provisions of the section are mandatory and must be considered a part of all escrow agreements involving the sale of a liquor license (*Cohn, supra,* p. 892). ■ Since one of the main purposes of the statute and agreement is to protect third parties, bona fide creditors of the seller are in that category and a failure to protect their interests will subject the escrow holder to liability for any loss occasioned by its breach of duty (*id.,* p. 893).

■ As it did in the trial court, the Bank seeks to justify the summary judgment in its favor, and its failure to pay the Migliore notes, on the

---

[3]The instructions in this escrow quoted earlier in this opinion were taken verbatim from Business and Professions Code section 24074.

ground it paid out the escrow funds precisely as ordered by the court in the Lewis and Patterson action.

"The evidence and facts are clear and undisputed. On three occasions the Bank was served with court orders validly and properly issued which explicitly and unequivocally restrained the Bank from paying any funds from the escrow except for certain purposes, none of which included the three Migliori promissory notes. Payment of the money to Migliori or Appellant by the Bank would have been clear disobedience of the court orders, would have been punishable as a civil contempt [Code of Civil Procedure, § 1209(5)] and the Bank and/or its officers would have·been subject to a fine not exceeding $500 or imprisonment not exceeding five days or both (Code of Civil Procedure § 1218).

"Appellant's claim for recovery is based on the premise that the court should impose liability on the Bank for doing exactly what the Bank was ordered to do by the court. To permit Appellant to go to trial on such a theory and in the face of these undisputed facts is inherently unreasonable and contrary to common sense. Since this was the basis of a summary judgment filed by respondent and since the facts relative to the service of the court orders on the Bank are not in dispute and were properly before the court [Evidence Code § 452(d)(1)], it is respectfully submitted that the motion for summary judgment was properly granted and should be affirmed."

It is of interest that the Bank has not supported its argument (either here or in the trial court) by a single citation of authority. While the argument has surface appeal, we find it will not withstand legal scrutiny and is based upon an incomplete consideration of the undisputed facts.

The Bank's position, properly stated, is that performance according to Business and Professions Code section 24074 and the terms of its escrow agreement was rendered impossible by operation of law, i.e., the court orders in the Lewis and Patterson action. ■ The California law is to the contrary and is set out in Witkin in his discussion of contracts under the headings "Impossibility of Performance—Operation of Law" as follows: "Contrary to the Contracts Restatement (§ 458), the rule in California applies only to *governmental* interference, such as results from the passage of a statute or ordinance making the contemplated performance illegal, or from a condemnation proceeding brought by the state or other public agency. Prevention by court order or process obtained by a *private* litigant, as in the case of an injunction or attachment obtained

against the promisor by some third party, is not considered an excuse. (*Sample v. Fresno Flume etc. Co.* (1900) 129 C. 222, 227, 61 P. 1085; *Union Contracting etc. Co. v. Campbell* (1905) 2 C.A. 534, 535, 84 P. 305; *Klauber v. San Diego Street Car Co.* (1892) 95 C. 353, 357, 30 P. 555; *Irwindale Citrus Assn. v. Semler* (1943) 60 C.A.2d 318, 324, 140 P.2d 716; cf. 3 A.L.R. 627; 12 A.L.R. 1079; 33 A.L.R. 499 [appointment of receiver].)" (1 Witkin, Summary of Cal. Law (8th ed.) pp. 517-518.) (See also 14 Cal.Jur.3d, Contracts, § 281, pp. 599-600.)

■ Moreover, the Bank was not, as it seeks to portray itself, the helpless victim of court orders requiring it to act contrary to its statutory and contractual obligations. The Bank was a party in the Lewis and Patterson action. Every order, including the final one directing it to pay out funds from the escrow, was issued upon stipulation; every stipulation was signed by a representative of the Bank. Having consented to the orders and in fact having affirmatively participated in initiating them, the Bank is in no position to argue it was compelled by legal authority to act contrary to its previously undertaken duties. The Bank's conduct in this instance would preclude the defense of impossibility, even under the Restatement rule (see Rest., Contracts, § 458 and illus. 2).

■■ In the superior court the Bank relied solely on its claim the orders in the Lewis and Patterson action made it impossible or unnecessary to comply with its escrow instructions as justifying the imposition of summary judgment. On appeal, it seeks to uphold the summary judgment on additional grounds, claiming: (1) plaintiff's assignor was not a creditor who had filed a claim in the escrow; (2) plaintiff made no showing there were sufficient funds in the escrow to pay her claim in any event.

While we are satisfied both of these issues raise questions of fact which the record before the court in the summary judgment proceedings left undisposed and unresolved (see statement of facts, *ante*), we wish to base our holding rejecting them on additional grounds. In its notice of motion for summary judgment, the declarations filed in support of the motion, and in the points and authorities filed in support of the motion, the Bank gave no inkling whatsoever it relied on either of the issues now raised as a ground for granting summary judgment.

■ A party opposing a motion for summary judgment cannot be required to marshal facts in opposition to the motion which refute claims wholly unrelated to the issues raised by the moving papers. ■ A

party may not present his case at the trial court on one theory and then urge a completely different theory on appeal. As stated by the Supreme Court in *Ernst* v. *Searle,* 218 Cal. 233, at pages 240-241 [22 P.2d 715]: "A party is not permitted to change his position and adopt a new and different theory on appeal. To permit him to do so would not only be unfair to the trial court, but manifestly unjust to the opposing litigant."

 As to the Bank's second additional contention on appeal, the shoe fits the other foot. ██ Because summary judgment is a drastic remedy, the moving party has the burden of establishing the evidentiary facts of every element necessary to entitle him to a judgment (*Vesely* v. *Sager,* 5 Cal.3d 153, 169 [95 Cal.Rptr. 623, 486 P.2d 151]). ██ Had the Bank urged the matter of insufficient funds in the escrow as a basis for summary judgment in the trial court, the burden of establishing that fact would have rested on its shoulders. Not only did it fail to raise the issue; it produced no facts to establish the truth of the claim.

The order granting summary judgment and the judgment of dismissal are reversed. The trial court is directed to reconsider plaintiff's motions which were denied as moot.

Brown (Gerald), P. J., and Cologne, J., concurred.