[L.A. No. 31394. Dec. 7, 1981.]

PETER SPRECHER, Cross-complainant and Appellant, v.
ADAMSON COMPANIES et al., Cross-defendants and Respondents.

COUNSEL

Gary S. Elster, Dunne, Shallcross & Kane and Mark C. Kane for Cross-complainant and Appellant.

Tuttle & Taylor and Douglas W. Beck for Cross-defendants and Respondents.

OPINION

**BIRD, C. J.**—This case concerns the present validity of the old common law rule which immunized a possessor of land from liability for injury caused by a natural condition of his land to persons or property not on his land.

## I.

The following facts are not in dispute. Respondent, South Winter Mesa Associates, a joint venture between respondents the Adamson Companies and Century-Malibu Ventures, Inc., owns a 90-acre parcel of land in Malibu, California. The parcel is bounded on the north by

the Pacific Coast Highway and on the south by Malibu Road. Across Malibu Road and opposite the parcel are a number of beach front homes, including the home of appellant, Peter Sprecher.

Respondents' parcel of land contains part of an active landslide which extends seaward from the parcel for some 1,700 feet along Malibu Road and beyond the boundaries of respondents' property. The Sprecher property is situated within the toe of this slide. The landslide, which has been evident since the area was first developed in the early 1900's, is classified as active because it exhibits periodic cycles of activity and dormancy. The parties agree that the slide is a natural condition of the land which has not been affected by any of respondents' activities on the 90-acre parcel.

In March 1978, heavy spring rains triggered a major movement of the slide which caused appellant's home to rotate and to press against the home of his neighbor, Gwendolyn Sexton. As a result, Sexton filed an action against appellant, seeking to enjoin the encroachment of his home upon hers. Appellant cross-complained against Sexton, the County of Los Angeles and respondents.[1] Specifically, appellant sought damages for the harm done to his home by the landslide. He alleged that such damage proximately resulted from respondents' negligent failure to correct or to control the landslide condition.

Respondents moved for summary judgment, arguing primarily that a possessor of land has no duty to remedy a natural condition of the land in order to prevent harm to property outside his premises. Since the landslide was a natural condition, they argued that they were not liable for the damage to appellant's home.[2]

In opposition, appellant challenged the present validity of the common law rule of nonliability for a natural condition, arguing that the rule is neither premised upon sound public policy nor in accord with modern principles of tort liability.

The trial court ruled in favor of respondents and this appeal followed.

---

[1]Neither Sexton nor the County of Los Angeles is a party to this appeal.

[2]Two days before the hearing on the motion for summary judgment, respondents filed a reply memorandum of points and authorities in which they argued for the first time that their failure to remedy the landslide condition on the 90-acre parcel was reasonable under all the circumstances.

## II.

Summary judgment is properly granted where the evidence in support of the moving party, here the respondents, is sufficient to establish a complete defense to appellant's claims and there is no triable issue of fact. (*Frazier, Dame, Doherty, Parrish & Hanawalt* v. *Boccardo, Blum, Lull, Niland, Teerlink & Bell* (1977) 70 Cal.App.3d 331, 338 [138 Cal.Rptr. 670]; *Stationers Corp.* v. *Dun & Bradstreet, Inc.* (1965) 62 Cal.2d 412, 417 [42 Cal.Rptr. 449, 398 P.2d 785].) Obviously, a rule of law, such as the traditional rule regarding natural conditions, which provides that a defendant has no duty to protect plaintiff is a complete defense to a claim of negligence. Its effect is to immunize or exempt the defendant from liability for negligence. ■■ Therefore, the first question this court must decide is whether a possessor of land should be immunized from liability for harm caused by a natural condition of his land to persons outside his premises. That is, should a possessor's exposure to liability be determined by reference to the origin of the condition causing harm or in accord with the ordinary principles of negligence.

Under the common law, the major important limitation upon the responsibility of a possessor of land to those outside his premises concerned the natural condition of the land. (Prosser, Law of Torts (4th ed. 1971) § 57, p. 354.)[3] While the possessor's liability for harm caused by artificial conditions[4] was determined in accord with ordinary principles of negligence (*id.*, at p. 355; see Rest.2d Torts, §§ 364-370), the common law gave him an absolute immunity from liability for harm caused by conditions considered natural in origin. (Prosser, *supra*, at p. 354; see Rest.2d Torts, § 363, subd. (1).) No matter how great the harm threatened to his neighbor, or to one passing by, and no matter how small the effort needed to eliminate it, a possessor of land had no duty to remedy conditions that were natural in origin. (Rest.2d Torts, § 363, com. a; Prosser, *supra*, at p. 354.)

---

[3]The term "'[n]atural condition of the land' is used to indicate that the condition of land has not been changed by any act of a human being .... It is also used to include the natural growth of trees, weeds, and other vegetation upon land not artificially made receptive to them." (Rest.2d Torts, § 363, com. b.)

[4]"[A] structure erected upon land is a non-natural or artificial condition, as are trees or plants planted or preserved, and changes in the surface by excavation or filling, irrespective of whether they are harmful in themselves or become so only because of the subsequent operation of natural forces." (Rest.2d Torts, § 363, com. b.)

This court has held that it will not depart from the fundamental concept that a person is liable for injuries caused "by his want of ordinary care ... in the management of his property or person ..." (Civ. Code, § 1714) except when such a departure is "clearly supported by public policy." (*Rowland* v. *Christian* (1968) 69 Cal.2d 108, 112 [70 Cal. Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496].) Accordingly, common law distinctions resulting in wholesale immunities have been struck down when such distinctions could not withstand critical scrutiny. (E.g., *id.*, at pp. 118-119; *Dillon* v. *Legg* (1968) 68 Cal.2d 728 [69 Cal.Rptr. 72, 441 P.2d 912, 29 A.L.R.3d 1316]; *Elmore* v. *American Motors Corp.* (1969) 70 Cal.2d 578 [75 Cal.Rptr. 652, 451 P.2d 84]; see generally, Levy & Ursin, *Tort Law in California: At the Crossroads* (1979) 67 Cal.L.Rev. 497, 504-511 [collecting cases].)

In *Rowland*, this court stated that "[a] departure from [the] fundamental principle [of Civ. Code, § 1714] involves the balancing of a number of considerations[.] [T]he major ones are the foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, the extent of the burden to the defendant and [the] consequences to the community of imposing a duty to exercise care with resulting liability for breach, and the availability, cost, and prevalence of insurance for the risk involved." (*Rowland* v. *Christian, supra*, 69 Cal.2d at pp. 112-113.)

There appear to be only five California cases which refer to or deal with the distinction between artificial and natural conditions on land.[5] (*Coates* v. *Chinn* (1958) 51 Cal.2d 304 [332 P.2d 289]; *Harris* v. *De La Chapelle* (1976) 55 Cal.App.3d 644 [127 Cal.Rptr. 695]; *Wisher* v. *Fowler* (1970) 7 Cal.App.3d 225 [86 Cal.Rptr. 582]; *Potter* v. *Empress Theatre Co.* (1949) 91 Cal.App.2d 4 [204 P.2d 120]; *Boarts* v. *Imperial Irrigation Dist.* (1947) 80 Cal.App.2d 574 [182 P.2d 246].) Three of these decisions were concerned with the question of liability for damage caused by a natural, as opposed to an artificial, condition. *Boarts* relied on this distinction to deny recovery (*Boarts* v. *Imperial Irrigation Dist., supra*, at p. 578); *Wisher* questioned its applicability in an urban setting

---

[5]The law governing the rights and liabilities of land owners with respect to surface waters has, to some extent, developed over the years separately and independently from tort law generally and is not considered here. (See *Keys* v. *Romley* (1966) 64 Cal.2d 396, 400-408 [50 Cal.Rptr. 273, 412 P.2d 529].)

(*Wisher* v. *Fowler, supra,* 7 Cal.App.3d at p. 229); and *Harris* held that in an urban area, "a landowner is liable for conditions occurring where he fails to exercise reasonable care to [prevent] an unreasonable risk of harm to users of the highway from trees on his property" (*Harris* v. *De La Chapelle, supra,* 55 Cal.App.3d at p. 648). This court has not previously addressed the wisdom of the common law rule of nonliability for harm caused by a natural condition to persons outside the premises. *Coats* v. *Chinn, supra,* 51 Cal.2d at page 308, did no more than tacitly recognize that the rule of nonliability existed.

This progression of the law in California mirrors what appears to be a general trend toward rejecting the common law distinction between natural and artificial conditions. Instead, the courts are increasingly using ordinary negligence principles to determine a possessor's liability for harm caused by a condition of the land. The early case of *Gibson* v. *Denton* (1896) 4 App.Div. 198 [38 N.Y.S. 554] was a precursor of this trend. In *Gibson,* the court held a possessor of land liable for damage caused when a decayed tree on her premises fell on the home of her neighbor during a storm. After noting that the defendant clearly would be liable for the fall of a dilapidated building, or artificial structure, the court observed that it could "see no good reason why she should not be responsible for the fall of a decayed tree, which she allowed to remain on her premises." (*Id.,* at p. 555.) "[T]he tree was on her lot, and was her property. It was as much under her control as a pole or building in the same position would have been." (*Ibid.*) Thus, "[t]he defendant had no more right to keep, maintain, or suffer to remain on her premises an unsound tree ... than she would have had to keep a dilapidated and unsafe building in the same position." (*Id.,* at pp. 555-556.)

In more recent years, at least 13 other states and the District of Columbia have begun applying ordinary negligence principles in determining a possessor's liability for harm caused by a natural condition. These states include Illinois (*Mahurin* v. *Lockhart* (1979) 71 Ill.App.3d 691 [390 N.E.2d 523]); Oregon (*Taylor* v. *Olsen* (1978) 282 Ore. 343 [578 P.2d 779]); Georgia (*Cornett* v. *Agee* (1977) 143 Ga.App. 55 [237 S.E.2d 522]); Pennsylvania (*Barker* v. *Brown* (1975) 236 Pa.Super. 75 [340 A.2d 566]); Rhode Island (*Fabbri* v. *Regis Forcier, Inc.* (1975) 114 R.I. 207 [330 A.2d 807]); Maryland (*Hensley* v. *Montgomery County* (1975) 25 Md.App.361 [334 A.2d 542]); North Carolina (*Rowe* v. *McGee* (1969) 5 N.C.App. 60 [168 S.E.2d 77]); Arizona (*Carver* v. *Salt River Valley Water Users' Ass'n.* (1968) 5 Ariz.App. 386 [446 P.2d 492], vacated on other grounds (1969) 104 Ariz. 513

[456 P.2d 371]); Louisiana (*Farbe* v. *Klein* (La.App. 1966) 187 So.2d 467); Massachusetts (*Kurtigian* v. *City of Worcester* (1965) 348 Mass. 284 [203 N.E.2d 692]); Washington (*Albin* v. *National Bank of Commerce of Seattle* (1962) 60 Wn.2d 745 [375 P.2d 487]); Kentucky (*Lemon* v. *Edwards* (Ky.App. 1961) 344 S.W.2d 822); and Ohio (*Hay* v. *Norwalk Lodge No. 730, B.P.O.E.* (1951) 92 Ohio App. 14 [109 N.E.2d 481]). (See also *Husovsky* v. *United States* (D.C.Cir. 1978) 590 F.2d 944; *Dudley* v. *Meadowbrook, Inc.* (D.C.Mun.App. 1961) 166 A.2d 743; *Turner* v. *Ridley* (D.C.Mun.App. 1958) 144 A.2d 269.)

Not surprisingly, all these cases involved an injury caused by a fallen tree. However, the principles expressed by these courts are not so limited. For example, the court in *Dudley* v. *Meadowbrook, Inc., supra*, 166 A.2d 743, held that a possessor of land has a "duty of common prudence in maintaining his property, including trees thereon, in such a way as to prevent injury to his neighbor's property." (*Id.*, at p. 744; see also *Turner* v. *Ridley, supra*, 144 A.2d at pp. 270-271 [same court: duty applied to automobile parked on public road].)

The courts are not simply creating an exception to the common law rule of nonliability for damage caused by trees and retaining the rule for other natural conditions of the land. Instead, the courts are moving toward jettisoning the common law rule in its entirety and replacing it with a single duty of reasonable care in the maintenance of property. This development is reflected in the Restatement Second of Torts, which now recognizes that a possessor of land may be subject to liability for harm caused not just by trees but by any natural condition of the land. (Compare Rest.2d Torts, § 363, subd. (2) [promulgated in 1963-1964] with Rest.2d Torts, § 840, subd. (2) [promulgated in 1977]; see also, *id.*, § 840, com. c.)

Furthermore, the courts are not imposing the duty of reasonable care only on possessors of land located in urban and suburban areas. The cases indicate that the duty of reasonable care for the protection of those outside the premises against natural conditions applies even in rural areas. (E.g., *Hensley* v. *Montgomery County, supra*, 334 A.2d at p. 545; see generally Rest.2d Torts (appen.) § 363, rptr.'s notes, p. 323.) Some of the cases, however, have drawn a distinction between the standard of care owed with respect to natural conditions in urban areas and the standard owed in rural areas. (E.g., *Hensley* v. *Montgomery County, supra*, 334 A.2d at pp. 545-547; *Hay* v. *Norwalk Lodge No. 730, B.P.O.E., supra*, 92 Ohio App. 14 [109 N.E.2d 481].)

While the courts have imposed liability for harm caused by a natural condition where the possessor of land located in a rural area knew or had reason to know (see Rest.2d Torts, § 12, subd. (1) & com. a) of the danger it posed, some courts have refused to impose a duty of inspection on the possessor of rural land. (Rest.2d Torts (appen.) § 363, rptr.'s notes, p. 323.) Other courts have questioned the efficacy of a "rural" versus "urban" distinction even as regards the standard of care, noting that with the growth of suburbs and the increase in traffic through rural areas, it has become less workable. (E.g., *Husovsky* v. *United States, supra*, 590 F.2d at p. 951, fn. 15; *Albin* v. *National Bank of Commerce of Seattle, supra*, 375 P.2d at p. 490; *Carver* v. *Salt River Valley Water Users' Ass'n., supra*, 446 P.2d at pp. 498-499.) In *Taylor* v. *Olsen, supra*, 578 P.2d at page 782, the Oregon Supreme Court went even further. The court held that, in most cases, the location of the land becomes but one of many factors to be considered by the trier of fact in evaluating the reasonableness of the defendant's conduct. (*Ibid.*)

The latest formulation of the duty owed by a possessor of land to persons outside his premises with regard to natural conditions which is set forth in the Restatement Second of Torts still limits the reach of the duty to persons traveling on the public streets and highways. (Rest.2d Torts, § 840, subd. (2).) The American Law Institute, however, noted that at the time this formulation was promulgated, the authority was insufficient to support a position regarding whether the duty was owed adjoining landowners as well. (See Rest.2d Torts, § 840, com. c.) Nevertheless, a number of jurisdictions have held a possessor of land liable for harm caused an adjoining landowner by a natural condition of the land. (E.g., *Mahurin* v. *Lockhart, supra*, 390 N.E.2d 523; *Barker* v. *Brown, supra*, 340 A.2d 566; *Kurtigan* v. *City of Worcester, supra*, 203 N.E.2d 692; *Dudley* v. *Meadowbrook, supra*, 166 A.2d 743.) It is difficult to discern any reason to restrict the possessor's duty to individuals using the highways. To do so would create an unsatisfying anomaly: a possessor of land would have a duty of care toward strangers but not toward his neighbor.

In rejecting the common law rule of nonliability for natural conditions, the courts have recognized the inherent injustice involved in a rule which states that "a landowner may escape all liability for serious damage to his neighbors [or those using a public highway], merely by allowing nature to take its course." (Prosser, *supra*, at p. 355.) As one commentator has observed: "[w]here a planted tree has become danger-

ous to persons on the highway or on adjoining land, and causes harm, the fault lies not in the planting of the tree but in permitting it to remain after it has become unsafe." (Noel, *Nuisances From Land in Its Natural Condition* (1943) 56 Harv.L.Rev. 772, 796-797.)

Historically, the consideration most frequently invoked to support the rule of nonliability for natural conditions was that it was merely an embodiment of the principle that one should not be obligated to undertake affirmative conduct to aid or protect others (Rest.2d Torts, § 314; see generally, James, *Scope of Duty in Negligence Cases* (1953) 47 Nw.U.L.Rev. 778, 800-809; Noel, *Nuisances From Land in Its Natural Condition, supra*, 56 Harv.L.Rev. at pp. 773, 796-797 and fn. 102; McCleary, *The Possessors' Responsibilities as to Trees* (1964) 29 Mo.L.Rev. 159; 2 Harper & James, The Law of Torts (1956) § 27.19, pp. 1521-1522.) This doctrine rested on the common law distinction between the infliction of harm and the failure to prevent it, or misfeasance and nonfeasance. (Rest.2d Torts, § 314, com. c.) Misfeasance was determined to exist when a defendant played some part in the creation of a risk, even if his participation was innocent. Nonfeasance occurred when a defendant had merely failed to intervene in a plaintiff's behalf. (See generally, Weinrib, *The Case for a Duty to Rescue* (1980) 90 Yale L.J. 247, 251-258.) Liability for nonfeasance, or the failure to take affirmative action, was ordinarily imposed only where some special relationship between the plaintiff and defendant could be established. (*Id.*, at p. 248 and fn. 7; Rest.2d Torts, § 314, com. a.)

Proponents of the rule of nonliability for natural conditions argued that a defendant's failure to prevent a natural condition from causing harm was mere nonfeasance. A natural condition of the land was by definition, they argued, one which no human being had played a part in creating (see *ante*, fn. 3). (See Noel, *Nuisances From Land in Its Natural Condition, supra*, 56 Harv.L.Rev., at p. 773.) Therefore, no basis for liability existed because a duty to exercise reasonable care could not arise out of possession alone. (*Ibid.*) Since there was no special relationship between the possessor of land and persons outside the premises, there could be no liability. (See Rest.2d Torts, § 314, com. f.) Conversely, a defendant's failure to prevent an artificial condition from causing harm constituted actionable misfeasance.

Whatever the rule may once have been, it is now clear that a duty to exercise due care can arise out of possession alone. One example is pro-

vided by modern cases dealing with the duty of a possessor of land to act affirmatively for the protection of individuals who come upon the premises. In days gone by, a possessor of land was deemed to owe such a duty of care only to invitees. That is, the duty to act affirmatively was grounded in the special relation between the possessor-invitor and the invitee. (See *Rowland v. Christian, supra,* 69 Cal.2d 108, 114; Prosser, *supra,* at p. 385.) *Rowland* held that whether the individual coming upon the land was a trespasser, a licensee or an invitee made no difference as to the duty of reasonable care owed but was to be considered only as to the issue of whether the possessor had exercised reasonable care under all the circumstances. (*Rowland v. Christian, supra,* 69 Cal.2d at pp. 118-119.)

Modern cases recognize that after *Rowland,* the duty to take affirmative action for the protection of individuals coming upon the land is grounded in the possession of the premises and the attendant right to control and manage the premises. (E.g., *Rogers v. Jones* (1976) 56 Cal.App.3d 346, 350 [128 Cal.Rptr. 404]; *O'Hara v. Western Seven Trees Corp.* (1977) 75 Cal.App.3d 798, 802-803 [142 Cal.Rptr. 487].)

Moreover, the possessor's control and supervisory power over the land has been expressly relied upon by some courts in imposing a duty of reasonable care with regard to a natural condition of the land. *Husovsky v. United States, supra,* 590 F.2d 944, involved a motorist's suit for injuries he sustained when a poplar tree fell on his automobile while he was driving through a public park. Although India, not the United States, owned the tract of land upon which the tree stood, a federal agency serviced and maintained the tract as well as the surrounding parkland.

In considering whether the United States had a duty to use reasonable care to protect motorists from hazards posed by natural conditions on the tract, the court reasoned as follows. "[T]he duties owed in connection with the condition of land are not invariably placed on the person [holding title] but, rather, are owed by the person in possession of the land [citations omitted] because [of the possessor's] supervisory control over the activities conducted upon, and the condition of, the land." (*Id.,* at p. 953.) In the case before the court, it was the United States that exercised such control and supervision over the tract of land on which the tree stood. Accordingly, the court held that "the United States had a duty to exercise reasonable care in its supervision thereof,

and thereby became obligated to use reasonable diligence to protect motorists ... from hazards posed by the land." (*Ibid.*; see also *Gibson* v. *Denton, supra*, 38 N.Y.S. at pp. 555-556.)

Thus, it becomes clear that the traditional characterization of a defendant's failure to take affirmative steps to prevent a natural condition from causing harm as nonactionable nonfeasance conflicts sharply with modern perceptions of the obligations which flow from the possession of land. Possession ordinarily brings with it the right of supervision and control. As Justice Mosk has aptly stated, the right of supervision and control "goes to the very heart of the ascription of tortious responsibility ...." (*Connor* v. *Great Western Sav. & Loan Assn.* (1968) 69 Cal.2d 850, 874 [73 Cal.Rptr. 369, 447 P.2d 609, 39 A.L.R.3d 224] [dis. opn. of Mosk, J.].)

Another deficiency of the historical justification of the rule of nonliability is simply that it proves too much. Under the traditional analysis, a possessor of land should be excused from any duty to prevent harm to persons outside his land whenever he has played no part in the creation of the condition which threatens the harm, be it artificial or natural. However, most courts recognize that the possessor is under an affirmative duty to act with regard to a dangerous artificial condition even though the condition was created solely by some predecessor in title or possession (Rest.2d Torts, § 366;[6] see e.g., *Dye* v. *Burdick* (1977) 262 Ark. 124 [553 S.W.2d 833, 836-837]); or by the unauthorized conduct of some other third person (Rest.2d Torts, § 364, subd. (c)).[7] "To impose such a duty is to cross the line from misfeasance to nonfeasance" unless the present possessor somehow aggravates the danger. (See

---

[6]Section 366 provides: "One who takes possession of land upon which there is an existing structure or other artificial condition unreasonably dangerous to persons or property outside of the land is subject to liability for physical harm caused to them by the condition after, but only after,

"(a) the possessor knows or should know of the condition, and

"(b) he knows or should know that it exists without the consent of those affected by it, and

"(c) he has failed, after a reasonable opportunity, to make it safe or otherwise to protect such persons against it."

[7]Section 364, subdivision (c), provides: "A possessor of land is subject to liability to others outside of the land for physical harm caused by a structure or other artificial condition on the land, which the possessor realizes or should realize will involve an unreasonable risk of harm, if ...

"(c) the condition is created by a third person without the possessor's consent or acquiescence, but reasonable care is not taken to make the condition safe after the possessor knows or should know of it."

Weinrib, *The Case for a Duty to Rescue, supra*, 90 Yale L.J. at p. 257.)[8]

Interestingly enough, in the cases holding that a possessor has an affirmative duty to prevent harm by a dangerous artificial condition created solely by another, the liability of the defendant has been predicated upon his possession and control of the artificial condition which caused the harm. (E.g., *Dye* v. *Burdick, supra*, 553 S.W.2d 833; cf. *Pridgen* v. *Boston Housing Authority* (1974) 364 Mass. 696 [308 N.E.2d 467, 475-478, 70 A.L.R.3d 1106].) Thus, these cases confirm that mere possession with its attendant right to control conditions on the premises is a sufficient basis for the imposition of an affirmative duty to act. (See generally, 2 Harper & James, *supra*, at pp. 1523-1525.) In sum, the historical justification for the rule of nonliability for natural conditions has lost whatever validity it may once have had.

In addition, adherence to the rule in California would produce an anomalous result. A possessor of land would owe a duty of care to protect trespassers, invitees and licensees, but not his neighbor, from harms threatened by a natural condition of the land. It has long been established in California that a possessor of land is subject to liability for harm caused a person upon the land by a natural condition. (E.g., *Austin* v. *Riverside Portland Cement Co.* (1955) 44 Cal.2d 225, 233 [282 P.2d 69]; but see Civ. Code, § 846.) It is difficult to see why this court should support a rule which would allow a trespasser to bring an action in negligence that would be denied a neighbor, where both were standing on either side of the possessor's boundary line and were both struck by a dead limb from his tree.

Finally, it is apparent that the distinction between artificial and natural conditions, and the immunity from liability predicated on that distinction, bears little relationship to the major factors which should determine whether immunity should be given the possessor of land for

---

[8]Weinrib gives the following example of aggravating an independent risk. "Although it may be nonfeasance to refuse to rescue a drowning person whose predicament arose independently, it is misfeasance to hide the rope that others might toss out to him." (*Id.*, at p. 258.) It can be argued that by virtue of taking possession of a tract of land, and thus preventing another from doing so, a possessor "hides the rope" that others might toss to those outside the premises. That is, his possession of land, having on it a dangerous condition, forestalls its possession by another who might abate the condition. So viewed, any unreasonable failure to abate would constitute misfeasance. But it would be misfeasance whether the dangerous condition was a natural or an artificial one.

harm done by a natural condition of the land. (See *ante*, p. 363.) The foreseeability of harm to the plaintiff, the degree of certainty that the plaintiff suffered injury, the closeness of the connection between the defendant's conduct and the injury suffered, the moral blame attached to the defendant's conduct, the policy of preventing future harm, and the extent of the burden to the defendant and the consequence to the community of imposing a duty to exercise care have little, if any, relationship to the natural, as opposed to artificial, origin of the condition causing harm.

The remaining factors, the availability, cost, and prevalence of insurance may in some cases bear a relationship to the natural origin of the condition. Insurance may not be readily available for the risks posed by some natural conditions. On balance, however, it is clear that a departure from the fundamental concept that a person is liable for the harm caused "by his want of ordinary care ... in the management of his property ...." (Civ. Code, § 1714) is unwarranted as regards natural conditions of land.

The trend in the law is in the direction of imposing a duty of reasonable care upon the possessor of land with regard to natural conditions of land. The erosion of the doctrinal underpinning of the rule of nonliability is evident from even a cursory review of the case law. Also evident is the lack of congruence between the old common law rule of nonliability and the relevant factors which should determine whether a duty exists. All this leads to but one conclusion. The distinction between artificial and natural conditions should be rejected. "A [person's] life or limb [or property] does not become less worthy of protection by the law nor a loss less worthy of compensation under the law" because that person has been injured by a natural, as opposed to an artificial, condition. (*Rowland* v. *Christian, supra*, 69 Cal.2d at p. 118.)

"It bears repetition that the basic policy of this state ... is that everyone is responsible for any injury caused to another by his want of ordinary care or skill in the management of his property. The factors which may in particular cases warrant a departure from this fundamental principle do not warrant the wholesale immunit[y] resulting from the common law [distinction] .... The proper test to be applied to the liability of the possessor of land ... is whether in the management of his property he has acted as a reasonable [person] in view of the probability of injury to others ...." (*Id.*, at pp. 118-119.)

It must also be emphasized that the liability imposed is for negligence. The question is whether in the management of his property, the possessor of land has acted as a reasonable person under all the circumstances. The likelihood of injury to plaintiff, the probable seriousness of such injury, the burden of reducing or avoiding the risk, the location of the land, and the possessor's degree of control over the risk-creating condition are among the factors to be considered by the trier of fact in evaluating the reasonableness of a defendant's conduct.[9]

## III.

Respondents next contend that the summary judgment must be affirmed because appellant failed to introduce admissible evidence sufficient to raise a triable issue of fact regarding the reasonableness of respondent's failure to take affirmative steps to control the landslide condition on the 90-acre parcel. "[E]ven when there is no dispute as to the facts, it usually is for the jury to decide whether the conduct in question meets the reasonable man standard . . . ." (Wright & Miller, Federal Practice and Procedure (1973) § 2729, pp. 572-573.) "In short, negligence is a [triable issue] of fact if different conclusions can be rationally drawn from the evidence." (*Maxwell* v. *Colburn* (1980) 105 Cal.App.3d 180, 186 [163 Cal.Rptr. 912].) Moreover, "doubts as to the propriety of granting the motion should be resolved in favor of the party opposing the motion." (*Stationers Corp.* v. *Dun & Bradstreet, Inc., supra*, 62 Cal.2d at p. 417.)

Respondents' expert witness testified, by affidavit, that it ordinarily would be quite expensive for respondents even to determine the measures required to correct the landslide condition on the 90-acre parcel. Construction of the corrective measures would entail even greater expense. Moreover, it would not be possible for respondents totally to control the landslide. A full solution would require that measures also be taken upon the property of other landowners in the slide area. Finally, respondents' geologist asserted that the measures proposed for control of the slide by appellant's expert witness would be, at best, only slightly effective and that the cost of implementing them, therefore, would not be justified by the benefit to appellant.

---

[9]To the extent that they are inconsistent with this decision, the following cases are disapproved: *Coates* v. *Chinn, supra*, 51 Cal.2d 304; *Harris* v. *De La Chappelle, supra*, 55 Cal.App.3d 644; *Wisher* v. *Fowler, supra*, 7 Cal.App.3d 225 [86 Cal.Rptr. 582]; *Potter* v. *Empress Theatre Co., supra*, 91 Cal.App.2d 4 [204 P.2d 120]; *Boarts* v. *Imperial Irrigation Dist., supra*, 80 Cal.App.2d 574 [182 P.2d 246].

On the other hand, that portion of appellant's evidence which is conceded to be admissible establishes that respondents knew or had reason to know of the landslide but did nothing to abate the condition. Further, proper excavation and sloping at the head of the slide together with dewatering might have been effective in preventing the landslide from harming appellant's home.

Construing appellant's evidence liberally and respondents' narrowly, as this court must (*Stationers Corp.* v. *Dun & Bradstreet, Inc., supra*, 62 Cal.2d at p. 417), a rational inference can be drawn that effective measures for the control of the slide were within respondents' reach and that such measures would have entailed a substantial expense. Although the cost of implementing only slightly effective measures would not be justified by the benefit to appellant, it can be inferred that the cost of implementing effective measures might (or might not) be justified by the benefit to appellant and to respondents. Although the case is a close one, the evidence does not conclusively establish that no rational inference of negligence can be drawn under the circumstances of this case.

Moreover, it should be noted that the motion for summary judgment was heard relatively early in the course of this litigation. Furthermore, respondents' moving papers gave little warning, prior to the filing of the reply memorandum of points and authorities, that they would seek summary judgment on the ground that the failure to take steps to control the landslide was reasonable. It is, then, understandable why appellant did not marshal extensive facts addressing a contention not made in the respondents' moving papers. (See *Webster* v. *Southern Cal. First Nat. Bank* (1977) 68 Cal.App.3d 407, 416 [137 Cal.Rptr. 293].) When this contention was made, only two days remained before the hearing on the motion. For these reasons, the summary judgment should not have been granted.

## IV.

The judgment of the trial court is reversed and the cause remanded to the trial court for further proceedings consistent with the views expressed in this opinion.

Tobriner, J., Mosk, J., Newman, J., Work, J.,* and McClosky, J.,* concurred.

---

*Assigned by the Chairperson of the Judicial Council.

RICHARDSON, J.—I concur in the judgment of the court which reverses the trial court's entry of summary judgment in favor of respondents. It seems proper to require that landowners act reasonably with reference to their property, thus preventing damage to their neighbors. This is so regardless of whether the condition threatening the injury or damage is artificial or natural.

I think, however, that it is unfortunate that this salutary principle of tort law which is consistent with, but an extension of, our holding in *Rowland* v. *Christian* (1968) 69 Cal.2d 108 [70 Cal.Rptr. 97, 443 P.2d 561, 32 A.L.R.3d 496], is expressed within the circumstances alleged in this case. I find it exceedingly difficult to imagine what respondents *reasonably* could have done to prevent or reduce the damage caused by the natural condition here present.

It is apparently conceded by all parties that the damage caused in the case before us consisted of a landslide triggered by unseasonably heavy rains falling on an active landslide area. This area is very large, very deep and very old. It is characterized by unstable soil which, when it slides, accretes a toe at the edge of the Pacific Ocean. The toe, which helps to hold back the upland soil, is, in turn, subject to wave action by Pacific waters which weakens it. When the rains are heavy and the toe is thus weakened, there are periodic slides. This land subsidence has been continuing apparently for aeons in the area between respondents' property and the Pacific Ocean. The instability of the soil is an ancient geological phenomenon widely known and accepted by the inhabitants of the area. No activity by respondents contributed in any manner to the slide or to the damage. Any corrective measures would have involved the properties along the entire width of the slide area, only a small portion of which extends onto respondents' land. Under the foregoing circumstances, described by the majority as "close," I am unable to conjure what, if any, restraining engineering procedures *reasonably* could be required of respondents.

Nonetheless, I agree that appellant should be entitled before a fact finder to explore the propriety of respondents' conduct referrable to the geological condition.