[Civ. No. 47478. First Dist., Div. Four. Apr. 2, 1980.]

HARRY FOLBERG et al., Plaintiffs and Appellants, v.
CLARA G. R. KINNEY COMPANY, INC., Defendant and
Respondent.

COUNSEL

Gary L. Olimpia, Patricia D. Daniel and Kelly, Leal & Olimpia for Plaintiffs and Appellants.

Thomas L. Fike, Betty B. Bennett and Strellis & Fike for Defendant and Respondent.

OPINION

**CHRISTIAN, J.**—Harry Folberg and Vivian Folberg (lessors) sued Clara G. R. Kinney Company, Inc. (lessee) seeking restitution of leased premises and damages for unpaid public improvement assessments in the sum of $4,328.60. The court granted a motion by Kinney for summary judgment and dismissed the complaint. Lessors appealed.

Respondent has been a tenant on the property located at 3380 El Camino Real, Santa Clara, California, continuously since April 1, 1958. Respondent leased the property for commercial purposes for a term of twenty-five years with three successive five-year renewal options. On February 24, 1978, appellants purchased the property subject to respondent's lease.

An improvement assessment had been levied against the property on January 12, 1968. Under terms of the assessment, the previous owners had a choice of paying the assessment no later than February 13, 1968, or deferring total payment of the assessment and paying installments plus interest over a period of years. The previous owners chose the deferred payment plan and looked to respondent for payment of the assessment upon that basis. The assessment was collected with the county taxes. Respondent, being obligated under the lease to pay assessments, paid each installment on time since the option was taken, including the payment for the 1977-1978 fiscal year.

To secure financing to purchase the property, appellants were required by their lender to pay the entire balance of the assessment. Appellants paid the assessment in full.

A representative of Valley Title Company, appellants' agent, sent three letters, dated February 24, March 20, and April 25, 1978, to respondent stating that appellants had purchased the property and paid the balance due on the assessment. A request for respondent to make payment was made only in the letter of April 25, 1978. The April 25 letter was not stated in the alternative (i.e., to pay or quit the premises). Appellants declared respondent in default for failing to pay the assessment, serving it with a "Five Day Notice of Termination of Lease" on July 17, 1978. Respondent tendered payment on July 20, 1978. Appellants, however, refused respondent's tender, which they received on July 24.

Respondent moved for summary judgment on the grounds, stated in its moving papers, that (1) the improvement assessment "is not presently due and payable," (2) appellants had purported to effect an impermissible "modification" of the lease by declaring a "unilateral acceleration" of respondent's obligation to pay the assessment, and (3) respondent's tender of the amount of the assessment on July 20, 1978, had been "timely" but appellants had "groundlessly rejected" it. Appellants challenged the motion on each of these three grounds. The judge granted the motion, but did so on a ground not raised by either of the parties, stating that none of the letters appellants had written to respondent had complied with the notice to quit requirements prescribed by Code of Civil Procedure section 1161, subdivision 2, which requires such notice to be phrased in the alternative, i.e., demanding payment or possession of the property.

Appellants contend, as they did below in opposition to the motion for summary judgment, that the improvement assessment levied on the leased premises is "presently due and payable." They also argue that the court erred when it granted summary judgment pursuant to the notice provisions of section 1161, because this was not presented by respondent as a basis for summary judgment; they alternatively argue that different notice requirements were set forth in the lease and were satisfied. Respondent contends that neither the notice provisions of the lease nor the statutory provisions allegedly made applicable by the lease were satisfied, and urge this point as a basis for affirmance of the summary judgment.

I

The alleged absence of an effective notice to quit, if established, would itself absolve respondent of liability for unlawful detainer, even if the improvement assessment were presently due and payable. It is therefore necessary to determine whether the notice issue is cognizable on this appeal. ▮ We conclude that the law of summary judgments precludes affirmance based upon the alleged inadequacy of appellants' notice to quit.

▮ An appellate court must sustain a summary judgment if the trial court's decision is "'...right upon any theory of the law applicable to the case,...regardless of the considerations which may have moved the trial court to its conclusion.'" (*Snider* v. *Snider* (1962) 200 Cal.App.2d 741, 756 [19 Cal.Rptr. 709], quoting *Davey* v. *Southern Pacific Co.* (1897) 116 Cal. 325, 329 [48 P. 117].) But the basis for a summary judgment is the absence of triable fact issues (see, e.g., *Colby* v. *Schwartz* (1978) 78 Cal.App.3d 885, 889 [144 Cal.Rptr. 624]), and if a point is not argued below by the moving party and the record does not establish that the opposing party could not have shown a triable fact issue had the point been raised, the appellate court cannot determine whether the trial court's decision was "right" upon that point. (Compare *Snider* v. *Snider, supra*, 200 Cal.App.2d at pp. 744-745, 755-756 [ground not relied upon by trial court but upon which appellate court affirmed summary judgment was argued below by respondents in their moving papers].) This is true whether the point is first raised on appeal or was first raised by the trial court in rendering its decision.

▮ The lease in the present case permitted the lessor to elect to terminate the lease "[i]n the event that...the rent above reserved or any part thereof or any sum of money due or payable as additional rent under the provisions of this lease, shall not be paid on any day whereon such payment is due and such default shall continue for a period of ten (10) days after *written notice* by the Lessor to the Lessee...anything herein contained to the contrary notwithstanding, *any notice required by any statute or law now or hereafter in force, being hereby waived.*" (Italics added.) The parties could lawfully agree to notice requirements different from and superseding those contained in section 1161 because the lease was commercial rather than residential. (*Hignell* v. *Gebala* (1949) 90 Cal.App.2d 61 [202 P.2d 378]; *Devonshire* v. *Langstaff* (1935) 10 Cal.App.2d 369 [51 P.2d 902]; *Watkins* v. *McCartney* (1922) 57 Cal.App. 643 [207 P. 909]; cf. Civ. Code, § 1953 [provision

against waiver of statutory notice rights limited to dwellings].) The statute thus was not a basis for summary judgment. The substituted requirement of "written notice," however, is silent on its face as to form, i.e., as to whether written notice must be phrased in the alternative, requiring payment *or* possession of the property.

The alleged inadequacy of appellants' notice pursuant to the lease was not put in dispute by respondent, and we cannot conclude from the record that appellants could not have shown a triable fact issue as to the interpretation, with regard to form, of the phrase "written notice." (Cf. *Webster* v. *Southern Cal. First Nat. Bank* (1977) 68 Cal.App.3d 407, 416 [137 Cal.Rptr. 293].) It is possible that appellants could present extrinsic aids to interpretation, such as evidence of usage in the relevant locale (Civ. Code, § 1646) or evidence that respondent had believed the lessor to have understood the lease not to require notice to be phrased in the alternative (Civ. Code, § 1649). They had no reason to present such evidence. ■ "A party opposing a motion for summary judgment cannot be required to marshal facts in opposition to the motion which refute claims wholly unrelated to the issues raised by the moving papers." (*Webster* v. *Southern Cal. First Nat. Bank, supra*, 68 Cal.App.3d at p. 416.) Appellants did present evidence that respondent had drafted the lease, thus supporting a construction of the lease not requiring notice to be stated in the alternative (Civ. Code, § 1654), but the evidence was presented to support an interpretation favorable to appellants on the issue of whether the assessment was presently due and payable.

## II

■ Unlike the notice issue, the question as to whether the improvement assessment was "presently due and payable" may be considered as a basis for affirmance because it was expressly advanced and contested as a ground for respondent's motion for summary judgment. The assessment, however, has been fully paid to the levying municipality. The consequences are controlled by explicit provisions in the parties' lease which make the amount of the paid assessment collectible by appellants as additional *rent*. The provisions appear in paragraph "FIRST" of the lease, which is captioned "Lessee To Pay *Rent*." (Italics added.)[1] Its subparagraph (a) is a covenant by respondent, as the "Lessee," to pay

---

[1] All emphasis appearing in quotations of the lease has been added.

"the annual *rent* reserved herein and *additional rent* and all such other sums as may become payable on account of the Lessee's *default* in the observance of any of the covenants herein contained on the Lessee's part to be performed...."

The first of such "covenants" appears in subparagraph (b), which provides that "...Lessee *shall* during the term...pay and discharge all...*assessments*...which shall during the term...*be imposed upon*, or *become due and payable*, or *become a lien upon the premises*..., by virtue of any present or any future laws of...any...governmental or municipal authority, and will from time to time upon reasonable request exhibit the vouchers for such payment to the Lessor."

The provision of subparagraph (b) requiring respondent to "exhibit the vouchers" for paid assessments makes it clear that the subparagraph is addressed to payment of assessments *to the levying municipality* once they have been "imposed," or have "become due and payable," or have "become a lien upon the premises." Subparagraph (c) then provides for the event of their *non*payment by respondent at or after any such time. It first refers to that event as respondent's "default" in the "payment of any...assessments...for thirty (30) days after said charges shall have *become payable*, or have *become liens upon the demised premises* (whichever shall be sooner)...." Subparagraph (c) then provides for what "may" or "shall" occur, in the event of such 30-day "default" by respondent, as follows:

Appellants ("Lessor") "may" pay any assessment after the 30-day period has elapsed. If they do, the "amount so paid, with interest thereon, *may* be added as *additional rent* to the next installment of rent becoming due on the next rent day...." The "amount of such ...assessments..., *whether or not paid by the Lessor, shall* for all purposes be deemed to be *rent due and payable* on such next rent day or on any subsequent rent day as the Lessor may at Lessor's option elect...." However, "it is expressly understood that payment by the Lessor of any...assessments...*shall not be deemed to waive* or release the *default* in the payment thereof by the Lessee...."

This language must be applied to the pertinent circumstances shown on respondent's motion for summary judgment, which included these: The improvement assessment was levied by the City of Santa Clara. A public "Notice To Pay Assessments" issued by the city, early in 1968,

stated (1) that the assessment had been "adopted" by the city council on June 14, 1966; (2) that the "assessment and diagram to pay the costs and expenses" of the improvements had been "recorded" in the office of the superintendent of streets on January 12, 1968; (3) that it was "due and payable immediately" at the city hall "and must be paid within the period expiring February 13, 1968"; and (4) that in "the event of failure to pay before the expiration of said period," interest-bearing serial bonds would be issued, to mature on a 14-year schedule, "pursuant to the Improvement Bond Act of 1915."

For the purposes expressly contemplated in subparagraphs (b) and (c) of paragraph FIRST of the parties' lease, the notice thus established that the assessment had been "imposed upon" the premises, that it had "become due and payable" to the city, and that it had "become a lien upon the premises," at or about the time the notice was issued in 1968.[2]

Respondent was then in possession of the premises under the present lease, which it had executed with appellants' predecessor as "Lessor", prior to 1960. In the express terms provided in subparagraphs (b) and (c) of paragraph FIRST of the lease (quoted *ante*), respondent did not pay the assessment to the city within 30 days after it had been "imposed," or had "become due and payable" to the city, or had "become a lien upon the premises." Respondent was therefore in "default" of its payment to the city, which meant that the "Lessor" had the unqualified rights to pay it (by retiring the 1915 Act bonds) and to collect its amount from respondent as "additional rent," at any time thereafter.

The then "Lessor" did not elect to do this, and respondent met its obligation to pay the assessment by retiring the 1915 Act bonds as they

---

[2]These events were made clear by the notice itself, which effectively declared that the assessment had been "imposed" and expressly stated that it was then "due and payable" to the city. The fact that it had or would "become a lien upon the premises" was stated or portended by the reference in the notice to the issuance of bonds for the deferred collection of the assessment "pursuant to the Improvement Bond Act of 1915." That enactment (the 1915 Act) provides that such bonds impress a "lien" on affected real property which subsists until they have been fully paid and retired. (See Sts. & Hy. Code, div. 10, commencing with § 8500 [the 1915 Act]. See particularly *id.*, §§ 8570, 8701 et seq.) There are invisible ramifications here because the 1915 Act enables collection of an assessment but not its imposition as such, which means that this one was actually levied, and a lien attached, pursuant to some other legislative source not identified in this record. (See Sts. & Hy. Code, § 8570.) Whatever its source, however, the city's notice established that it had been "imposed," that it had become "due and payable" to the city, and that it had "become a lien upon the premises," by 1968 if not sooner.

successively became due each year. This was done with the forebearance of the "Lessor," who did not thereby "waive" its rights to pay the assessment and to demand reimbursement from respondent as "rent," at any time, because subparagraph (c) expressly so provided.

The situation of forebearance continued until 1978, when appellants bought the premises and became the "Lessor" under the lease. Appellants thereupon exercised the unwaived rights they held as "Lessor" under the provisions of subdivision (c): they paid off the unretired 1915 Act bonds and demanded reimbursement from respondent as "additional rent...due on the next rent day." The *assessment* was no longer "due and payable" because it had been *paid*. What was "due and payable" was the "additional rent" for which subparagraph (c) expressly provided in these circumstances.

Respondent declined to pay the "additional rent" when appellants demanded its payment in their letter dated April 25, 1978. It thus and then was in breach of its express covenant to pay *rent*, not its covenant to pay the assessment. That breach having occurred, respondent is not entitled to summary judgment on any ground pertaining to the time at which the assessment itself had become "due and payable."

## III

Respondent's motion for summary judgment was also made on the grounds that appellant had purported to effect an impermissible "modification" of the lease by declaring a "unilateral acceleration" of respondent's obligation to pay the assessment, and that respondent's "tender" of its amount on July 20, 1978, had been "groundlessly rejected" by appellants. Because the motion was made and contested on both grounds, we may consider each as a basis for affirming the summary judgment. Neither will suffice for that purpose. Appellants did not declare an "acceleration" of the obligation to pay the assessment, which respondent assumed in subparagraph (b) of paragraph FIRST of the lease: they paid it themselves, and demanded reimbursement of its amount as "rent," pursuant to subparagraph (c). Resolution of respondent's contention that there was a timely tender, which could have barred appellants' action (see Moskovitz et al., Cal. Eviction Defense Manual (Cont.Ed.Bar 1971) §§ 3.26-3.28, pp. 18-19), depends upon the validity of the "Five Day Notice of Termination" to which it responded;

the validity of that notice, however, is not subject to adjudication on this appeal (see discussion, *ante*).

The judgment is reversed.

Caldecott, P. J., and Rattigan, J., concurred.