Opinion
LAMBDEN, J.
Gabriel and Ann Martinez (individually Gabriel and Ann) brought this action against Gabriel’s former employer Scott Specialty Gases, Inc. (Scott), a Pennsylvania corporation with a facility in Fremont, California, Scott subsidiary Scott Semiconductor Gases, and Scott employee Paul Cowles (Cowles). Gabriel claimed unlawful termination in violation of public policy, defamation and misrepresentation concerning other employment (Lab. Code, § 1050), while Ann, his spouse, claimed loss of consortium. All four causes of action flowed from Gabriel’s being fired from his job at Scott.
Defendants sought summary judgment (Code Civ. Proc., § 437c) and prevailed, the court finding no issue of material fact to show that any of the claims were outside the scope of an arbitration agreement Gabriel had signed in 1997. Plaintiffs appeal the ensuing judgment. They argue that Scott had repudiated the agreement and so waived its right to enforce it. We will affirm the judgment.
Background
Plaintiffs’ first amended complaint alleges that Gabriel was hired by Scott on September 2, 1997, as a clean gas mixer and later worked as a dopant gas mixer, and then a corrosive liquid filler, until he was fired on May 27, 1998, after a dump cylinder at the Fremont plant exploded. Plaintiffs allege he was fired ostensibly for safety violations leading to the explosion (from overfilling) and for falsifying records, but actually in retaliation for having complained about unsafe and unlawful working conditions at the plant. Defendants, including plant manager Cowles, allegedly defamed him with an untrue *1240 story about the discharge and disseminated the untruth to prospective employers. Ann alleges that these same incidents led to her loss of consortium.
Defendants raised among their affirmative defenses that all of these claims were barred because they were subject to an agreement for final, binding and exclusive arbitration which plaintiffs had not only failed to exhaust but also repudiated.
The facts about the arbitration issue were largely undisputed on the motion for summary judgment. Upon first taking the job, Gabriel received and read an employee handbook called “Working with Scott” (publication No. 6086) that governed employer/employee matters and provided by attachment: “If any dispute arises from your employment with [Scott], you and [Scott] agree that you both will submit it exclusively to final and binding arbitration. Except for workers’ compensation and unemployment insurance claims and matters heard by the labor commissioner, ‘dispute’ includes every kind of type of [sic].dispute including, without limitation, any allegation of wrongful discharge, discrimination, harassment, or any injury to your physical, mental, or economic interests. This means that a neutral arbitrator, rather than a court or jury, will decide the dispute.” Such disputes were to be governed by Code of Civil Procedure section 1280 et seq. and submitted within one year after a dispute or termination of employment, and “[a]ny failure to request the arbitration in this time frame and according to the procedures set forth below shall constitute a waiver of all rights to raise any claims in any forum arising out of any dispute that was subject to arbitration.” Procedures were incorporated by reference to an “Employment Arbitration Procedure Manual” that employees could request any time. The material further advised, “Please remember you must sign and return the Acknowledgement of Receipt & Reading Certificate” (acknowledgement).
Gabriel signed such an acknowledgement (and a shorter separate form) on his first day of employment, September 2, 1997. The acknowledgement provided in part: “This certificate acknowledges that I received a copy of the Personnel Handbook, which supersedes all prior personnel handbooks or [Scott] employment policies. I understand that it contains important information about [Scott] general personnel policies, benefits, and provisions that control my employment relationship with [Scott], [¶] . . . [¶]
“ . . .1 acknowledge that [Scott] reserves the right to change any provision in this Handbook at any time for any reason without advance notice. Though [Scott] can make changes, I understand that nothing in this Handbook can be modified or deleted, nor can anything be added in any way by *1241 oral statements or practice. Only the Regional Vice President of [Scott] can change this Handbook, and the change must be in writing. If [Scott] makes any material changes, it will give me a copy of them.
“I also read and specifically agree that if there is any dispute arising out of my employment as described in the section called ‘Arbitration of Disputes’ in the handbook, I will submit it exclusively to final and binding arbitration according to the procedures outlined in the ‘Employment Arbitration Procedures Manual.’ ” (Underscore in original.)
Around February 23, 1998, Gabriel received an updated employee handbook—“Working with Scott” (publication No. 6086.1). As in 1997, the new handbook provided—now in the handbook itself rather than by attachment— for binding arbitration of employment-related disputes. There were also other changes: requests for arbitration (still with a one-year time limit) would be submitted to the American Arbitration Association (AAA) and governed by AAA rules of procedure, whereas the former provisions called for selection of arbitrators from the California State Mediation and Conciliation Service.
A cover letter dated February 23, from Scott vice-president Robert E. Squires, advised that the new handbook was “updated to include” a new reference index, sexual harassment and electronic communication policies, and “An updated Employee Dispute Resolution section - page 22 . . . .” The letter stated: “Please read this new handbook and return a signed copy of the Acknowledgment by March 16 to your Vice President or Senior Manager’s secretary for inclusion in your personnel file.”
The new acknowledgement form, as before, said the new handbook (publication No. 6086.1) “supersedes all prior personnel handbooks or [Scott] employment policies” and stated, above the signature line, “I . . . specifically agree that if there is any dispute arising out of my employment as described in the section called ‘Arbitration’ in the Handbook, I will submit it exclusively to final and binding arbitration according to the procedures outlined in the ‘American Arbitration Association National Rules for the Resolution of Employment Disputes.’ ”
Gabriel read the handbook and other documents but never signed or returned the acknowledgement. According to his own declaration, he had become disenchanted with aspects of his employment, had expressed unhappiness to plant manager Cowles and told Cowles he “would not sign” the acknowledgment because he “did not agree with” the arbitration policies and procedures. Afraid that his job might be in jeopardy due to his ongoing *1242 complaints, Gabriel wanted “to preserve [his] right to jury trial in the event of retaliatory discharge.”[1]
His firing came about three months later, on May 27, and Gabriel wrote to Scott on June 5 that he intended to make a claim with the state Labor Commissioner that he was fired for refusing to work in violation of occupational safety standards. In a response letter of June 18, office manager Regina Coe denied knowing of the matter but added: “If anyone at Scott has done so, we would like to know the details so that we can investigate fully and resolve any disputes in accordance with the Employee Dispute Resolution procedures presented in the ‘Working with Scott’ handbook number 6086.1, which you acknowledged receipt of on September 2, 1997. I have enclosed a copy of the handbook as well as a copy of your acknowledgement of receipt. [¶] . . . [¶] If you have any questions, please do not hesitate to contact me.”
Gabriel made no contact for arbitration but on September 14 filed this action, and on October 1 filed a first amended complaint adding Ann’s loss-of-consortium claim. On October 14, Scott’s counsel wrote to plaintiffs’ counsel, Colin H. Jewell, stating in part: “As you can see from the enclosures [the 1997 handbook and acknowledgement], Gabriel Martinez signed an arbitration agreement. The agreement covers all of the claims brought by [him]. He also was employed at the time Scott issued its new employee hand-book which contained a mandatory arbitration provision. Therefore, since arbitration is the exclusive means by which Mr. Martinez can pursue his claims, we are requesting that Gabriel Martinez immediately file a dismissal of all of his claims as to all parties.
“If Mr. Martinez does not dismiss his claims, we will consider his continuing to prosecute his case in superior court to be a direct repudiation of his arbitration agreement. We also will seek summary judgment for each Defendant under the controlling authority of Charles J. Rounds Co. v. Joint Council of Teamsters No. 42 (1971) 4 Cal.3d 888, 899 [95 Cal.Rptr. 53, 484 P.2d 1397]; 24 Hour Fitness[, Inc.] v. Superior Court (1998) [66] Cal.App.4th [1199 [78 Cal.Rptr.2d 533]]. By maintaining this lawsuit instead of proceeding to arbitration, [Mr. Martinez] is depriving Defendants of the benefit of the arbitration bargain and is breaching the arbitration agreement. . . .
“We .also believe that Ms. Martinez is required to arbitrate her loss of consortium claiiti. The parties’ arbitration agreement requires arbitration of *1243 any dispute arising out of Mr. Martinez’ employment. Ms. Martinez’ loss of consortium claim undoubtedly arises out of Mr. Martinez’ employment. [Citations.] . . . Accordingly, Ms. Martinez should dismiss her superior court case, as well, and demand arbitration of her loss of consortium claim. . . .
“. . . I am requesting that you immediately dismiss Gabriel and Ann Martinez’ claims. If you wish to pursue those claims, it will be necessary for you to invoke the arbitration procedures in a proper and timely manner. If you do not comply with this request, we will take the steps necessary to secure a summary judgment as to the non-complying party plaintiffs in accordance with Charles J. Rounds and 24 Hour Fitness.”
Plaintiffs did not invoke arbitration or dismiss. Their counsel, Attorney Jewell, responded in a letter of October 20 that he had discussed with his clients “your position that they are required to arbitrate the claims made in their lawsuit pursuant to an arbitration agreement between [Scott] and Gabriel Martinez dated September 2, 1997.” Counsel then set out what in essence would be plaintiffs’ position in opposition to summary judgment below and now on this appeal, namely, that there was no agreement to arbitrate because the 1997 arbitration agreement had been “rescinded” or “superseded” by Scott’s issuance of the 1998 handbook, which Gabriel never acknowledged. “In short,” counsel concluded, “my clients refuse your demand to arbitrate because they have not agreed to arbitrate their disputes. . . .”
Counsel for defendants reiterated by a letter of November 16 their demand for arbitration and warning of their intent to seek summary judgment. Defendants noticed their motion for summary judgment on January 22, 1999. The motion was ultimately argued and submitted on February 19 and then granted on February 22, consistent with the court’s tentative ruling.
Discussion
I. Summary Judgment Review
“A motion for summary judgment must be granted if all of the papers submitted show ‘there is no triable issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law. In determining whether the papers show . . . there is no triable issue as to any material fact the court shall consider all of the evidence set forth in the papers, . . . and all inferences reasonably deducible from the evidence ....’(§ 437c, subd. (c).) A defendant has met its burden of showing a cause of action has no *1244 merit if it ‘has shown that one or more elements of the cause of action . . . cannot be established, or that there is a complete defense to that cause of action. Once the defendant. . . has met that burden, the burden shifts to the plaintiff... to show ... a triable issue of one or more material facts exists as to that cause of action or a defense thereto. The plaintiff. . . may not rely upon the mere allegations or denials of its pleading to show ... a triable issue of material facts exists but, instead, shall set forth the specific facts showing that a triable issue of material fact exists . . . .’ (Id., subd. (o)(2); Parsons v. Crown Disposal Co. (1997) 15 Cal.4th 456, 464 & fn. 4 [63 Cal.Rptr.2d 291, 936 P.2d 70].)” (Scheiding v. Dinwiddle Construction Co. (1999) 69 Cal.App.4th 64, 69 [81 Cal.Rptr.2d 360].) Summary judgment rulings are reviewed de novo (ibid.; Buss v. Superior Court (1997) 16 Cal.4th 35, 60 [65 Cal.Rptr.2d 366, 939 P.2d 766]), including those granting the motion (Norgart v. Upjohn Co. (1999) 21 Cal.4th 383, 404 [87 Cal.Rptr.2d 453, 981 P.2d 79]). We may review only those material issues framed by the pleadings (Turner v. Anheuser-Busch, Inc. (1994) 7 Cal.4th 1238, 1252 [32 Cal.Rptr.2d 223, 876 P.2d 1022]) and presented to the trial court (American Continental Ins. Co. v. C & Z Timber Co. (1987) 195 Cal.App.3d 1271, 1281 [241 Cal.Rptr. 466]). We independently interpret a written contract when, as here, no extrinsic evidence and related credibility questions were presented below. (Milazo v. Gulf Ins. Co. (1990) 224 Cal.App.3d 1528, 1534 [274 Cal.Rptr. 632].) “The interpretation of a written instrument... is essentially a judicial function to be exercised according to the generally accepted canons of interpretation so that the purposes of the instrument may be given effect.” (Parsons v. Bristol Development Co. (1965) 62 Cal.2d 861, 865 [44 Cal.Rptr. 767, 402 P.2d 839].) “The possibility that, conflicting inferences can be drawn from uncontroverted evidence does not relieve the appellate court of its duty independently to interpret the instrument . . . .” (Estate of Dodge (1971) 6 Cal.3d 311, 318 [98 Cal.Rptr. 801, 491 P.2d 385].)
The court below found in effect that evidence of the 1997 arbitration agreement signed by Gabriel shifted the burden to plaintiffs to show a triable issue of fact why it did not control all of their causes of action and that plaintiffs had failed to meet that burden. In relying on the 1997 agreement, the court either did not reach whether the agreement of 1998 was valid or, less likely, found it invalid. Our review requires us to sustain the ruling if correct on any ground properly offered in support of summary judgment at the time, regardless of the reasons cited by the court in the ruling (Perez v. 222 Sutter St. Partners (1990) 222 Cal.App.3d 938, 943, fn. 4 [272 Cal.Rptr. 119]; Barbary Coast Furniture Co. v. Sjolie (1985) 167 Cal.App.3d 319, 331 [213 Cal.Rptr. 168]; Johanson Transportation Service v. Rich Pik’d Rite Inc. (1985) 164 Cal.App.3d 583, 588 [210 Cal.Rptr. 433]; Folberg v. Clara G. R. *1245 Kinney Co. (1980) 104 Cal.App.3d 136, 140 [163 Cal.Rptr. 426]), and this leaves us the option of deciding the validity of either agreement. Like the trial court, however, we find it sufficient that the 1997 agreement required arbitration. If, for sake of argument, the 1998 agreement was valid and superseded the 1997 agreement, the result is the same here—affirmance of the action’s dismissal. As will be seen (pt. IV, post), plaintiffs have no further recourse to arbitration at this point, and this makes differences between the two agreements moot.
II. Preliminary Matters
Thus limiting ourselves to the 1997 agreement, the battle lines on appeal are drawn over whether Scott repudiated the agreement through issuance of its 1998 handbook and, if not and the 1997 agreement remained in force, whether plaintiffs waived their right to arbitrate under it. Defendants also cautiously brief some preliminary questions, some of which plaintiffs litigated below but, here, appear to have abandoned.
Consistent with the briefing on appeal, we deem it undisputed that: (1) all of Gabriel’s claims fell within the scope of the 1997 agreement’s broad language (see 24 Hour Fitness, Inc. v. Superior Court, supra, 66 Cal.App.4th at pp. 1209-1210 (24 Hour Fitness); see generally Gross v. Recabaren (1988) 206 Cal.App.3d 771, 777 [253 Cal.Rptr. 820]; Berman v. Dean Witter & Co., Inc. (1975) 44 Cal.App.3d 999, 1003 [119 Cal.Rptr. 130]); (2) Ann’s claimed loss of consortium stems from those same arbitrable claims and thus is arbitrable as well (cf. Cole v. Fair Oaks Fire Protection Dist. (1987) 43 Cal.3d 148, 162-163 [233 Cal.Rptr. 308, 729 P.2d 743] [consortium claim barred by exclusive remedy of workers’ compensation barring husband’s underlying claims]; Gross v. Recabaren, supra, 206 Cal.App.3d at p. 781 [consortium claim subject to arbitration governing husband’s underlying malpractice claims]); and (3) all alleged wrongdoing by Cowles or other individuals who are not parties to the arbitration agreement is nevertheless arbitrable because those individuals are alleged to have been acting as agents or employees of Scott (Dryer v. Los Angeles Rams (1985) 40 Cal.3d 406, 418 [220 Cal.Rptr. 807, 709 P.2d 826]; Berman v. Dean Witter & Co., Inc., supra, 44 Cal.App.3d at p. 1004).
There is also no dispute that the 1997 agreement did in fact exist and that Scott, having raised arbitration as an affirmative defense, could properly seek dismissal of the action on summary judgment. (Charles J. Rounds Co. v. Joint Council of Teamsters No. 42, supra, 4 Cal.3d at pp. 894-895, 899-900 (Charles J. Rounds); 24 Hour Fitness, supra, 66 Cal.App.4th at pp. 1207-1208.)
*1246 III. Repudiation of the 1997 Arbitration Agreement
Plaintiffs concede the formation of the 1997 arbitration agreement, and it is clear from the record that the arbitration provisions had no fixed duration and allowed Scott to modify them in writing. Plaintiffs are also aware of authority from this appellate district holding, as to an agreement virtually identical with the one here (24 Hour Fitness, supra, 66 Cal.App.4th at p. 1205) that an employer’s reservation of the right to modify does not render the contract unenforceable as unconscionable, illusory or lacking in mutuality of obligation (id. at pp. 1212-1214), and they make no such claims. What they claim is that Scott repudiated the agreement in February 1998 by issuing the new handbook, declaring prior personnel handbooks and employment policies “superseded” and asking employees to sign new acknowledgements of receipt and reading. Whether Gabriel did or did not sign the new acknowledgement, they reason, the 1997 agreement ceased to bind them; it had been, in contract terminology, “repudiated,” or in statutory terminology, “waived” (Code Civ. Proc., § 1281.2, subd. (a)) or rendered subject to “revocation” (id., subd. (b); Engalla v. Permanente Medical Group, Inc. (1997) 15 Cal.4th 951, 973 [64 Cal.Rptr.2d 843, 938 P.2d 903] [construed to mean rescindable]). Once Scott issued the handbook and letter, plaintiffs urge, they were entitled to rely on repudiation and act to their detriment—meaning have Gabriel continue his employment and later file suit—and that once they reasonably and detrimentally relied, in legal effect treating the repudiation as an anticipatory breach, Scott lost any power to rescind its repudiation. (See generally Guerrieri v. Severini (1958) 51 Cal.2d 12, 18-19 [330 P.2d 635]; Maddy v. Castle (1976) 58 Cal.App.3d 716, 722 [130 Cal.Rptr. 160].)
We hold that there was neither repudiation nor reasonable reliance. We start with repudiation. “Anticipatory breach occurs when one of the parties to a bilateral contract repudiates the contract. The repudiation may be express or implied. An express repudiation is a clear, positive, unequivocal refusal to perform [citations]; an implied repudiation results from conduct where the promisor puts it out of his power to perform so as to make substantial performance of his promise impossible [citations].” (Taylor v. Johnston (1975) 15 Cal.3d 130, 137 [123 Cal.Rptr. 641, 539 P.2d 425].) Plaintiffs, to whom the burden on summary judgment had shifted to raise a triable issue why the 1997 agreement did not control (Code Civ. Proc., § 437c, subd. (o)(2)), bore a heavy burden, for “ ‘[a]nticipatory breach must appear only with the clearest terms of repudiation of the obligation of the contract. (Guerrieri v. Severini, supra, 51 Cal.2d at p. 18, citations omitted.) Moreover, the strong public policy of this state favoring arbitration as a means of dispute resolution requires courts to *1247 indulge every intendment to give effect to such proceedings. (Moncharsh v. Heily & Blase (1992) 3 Cal.4th 1, 9 [10 Cal.Rptr.2d 183, 832 P.2d 899].)
There was no express repudiation—i.e., clear, positive and unequivocal refusal by Scott to perform. Alluding to the acknowledgement form’s statement that the new handbook “superseded” prior personnel handbooks and employment policies, plaintiffs see no ambiguity in the word “superseded,” but they ignore the context of the word. A court must always examine the words of any agreement reduced to writing (Code Civ. Proc., § 1856), but to properly construe the agreement, it must also consider “the circumstances under which it was made, including the situation of the subject of the instrument, and of the parties to it. . . , so that the judge be placed in the position of those whose language he is to interpret” (id., § 1860; accord, Civ. Code, § 1647).
The materials being “superseded” in this case were, as stated on the face of the acknowledgement, “personnel handbooks” and “employment policies,” and the handbook contained “important information about [Scott] general personnel policies, benefits, and provision that control my employment relationship with [Scott].” Under plaintiffs’ view, there is a hiatus between Scott’s issuance of any new handbook and the time when an employee signs and agrees to the new one, or a perpetual lapse should the employee choose not to sign. This makes no sense. Clearly (and again assuming only for sake of argument that plaintiffs are correct that a new handbook has no effect until acknowledged in writing), this would mean that no employment policies, benefits or other provisions apply at all during the hiatus. A quick perusal of the handbook shows that this would include health benefits, vacation benefits, retirement benefits, harassment and discrimination policies and much more, not just arbitration requirements. This view is absurd, given the subject matter of the handbook and the anticipated circumstances of its periodic modification. Also defeating their position is the cover letter’s reference to an “updated” handbook. “Update” means, of course, “to bring up to date” (Webster’s New Collegiate Dict. (1977) p. 1285), not to cancel or revoke and start anew.
The facts here are not, as plaintiffs maintain, “virtually on all fours” with the facts in Bertero v. Superior Court (1963) 216 Cal.App.2d 213 [30 Cal.Rptr. 719] (Bertero). The employee there had commenced litigation after the employer had written him a letter saying the employment contract, in which the arbitration agreement was located, was “ ‘invalid, unenforceable and an imposition upon the company and its shareholders’ ” and that “ ‘the company hereby terminates and cancels such agreement.’ ” (Id. at p. 216.) Here, of course, Scott terminated the employment without any repudiation of *1248 the employment agreement, and plaintiffs’ view of the effect of the new handbook is unreasonable in context.
There was also no implied repudiation—i.e., “conduct where the promisor puts it out of his power to perform so as to make substantial performance of his promise impossible” (Taylor v. Johnston, supra, 15 Cal.3d at p. 137). Plaintiffs introduced no evidence showing, for example, that once Scott issued the new handbook, with its provisions for AAA arbitration and procedures, arbitration under the 1997 agreement’s terms was no longer possible.
The court below correctly held that the 1997 arbitration agreement remained in effect and controlled the claims presented in this action. It follows that since plaintiffs’ construction of the new handbook as a repudiation was not reasonable, plaintiffs could not reasonably have relied on repudiation to their detriment.
This is also a sufficient answer to an estoppel argument that we, like defendants, find implicit in plaintiffs’ briefing. Estoppel requires, among other things, reasonable reliance on the other party’s actions. (Russ Bldg. Partnership v. City and County of San Francisco (1988) 44 Cal.3d 839, 853-854 [244 Cal.Rptr. 682, 750 P.2d 324]; Golden West Baseball Co. v. City of Anaheim (1994) 25 Cal.App.4th 11, 47-48 [31 Cal.Rptr.2d 378].) We have set out in the background part of this opinion many of the postfiring communications of the parties and cannot agree with plaintiffs that it reasonably could have misled them into believing defendants deemed the 1997 agreement invalid. Defendants took a cautious position that there was a valid arbitration agreement in effect, whether from the 1997 agreement or from the superseding 1998 provisions. They also repeatedly referred to the acknowledgement Gabriel signed in 1997, which of course referred to the 1997 agreement. They did, in their first letter of June 18, 1998, refer inconsistently to the September 1997 acknowledgement and to “handbook number 6086.1,” which was the 1998 handbook, but this could not have been misleading in context. Gabriel, by his own declaration on the motion below, was acutely aware of a change in arbitration set out in the 1998 handbook and declined to sign the 1998 acknowledgement precisely for that reason. He cannot credibly argue now that he was confused about which book he had agreed to; he knew that publication “6086.1” did not exist until late February 1998. As a matter of law then, plaintiffs could not reasonably have been misled. Estoppel is resolvable by summary judgment when, as here, no estoppel could exist as a matter of law. (American Continental Ins. Co. v. C & Z Timber Co., supra, 195 Cal.App.3d at p. 1277; cf. Driscoll v. City of Los Angeles (1967) 67 Cal.2d 297, 305 [61 Cal.Rptr. 661, 431 P.2d 245] *1249 [estoppel is question of fact, not law, unless opposite conclusion is the only one that can be reasonably drawn].)
IV. Plaintiffs’ Waiver of Right to Arbitrate
Seized apparently with a late realization that the summary judgment might be affirmed, plaintiffs offer us an argument they did not offer below. They say they never waived their right to arbitrate and thus the proper course is not to affirm the dismissal of their action but, rather, to remand with directions to refer their claims to final and binding arbitration in accordance with the 1997 procedures. Having failed to raise this issue below, they frame it here as a challenge to a finding implied in the trial court’s ruling.
We find the issue procedurally barred. Anticipating that one possible alternative might be to stay the action and compel arbitration (Charles J. Rounds, supra, 4 Cal.3d at pp. 895-896), defendants offered that option in their moving papers, but plaintiffs, consistent with their previously stated refusal to arbitrate, never pursued this. “Th[e] point . . . was not raised in [the plaintiffs’] opposition papers or during argument below. Hence, it was neither considered nor ruled upon by the trial court. It is axiomatic that arguments not asserted below are waived and will not be considered for the first time on appeal.” (Ochoa v. Pacific Gas & Electric Co. (1998) 61 Cal.App.4th 1480, 1488, fn. 3 [72 Cal.Rptr.2d 232] [summary judgment].) “Generally, the rules relating to the scope of appellate review apply to appellate review of summary judgments. [Citation.] An argument or theory will generally not be considered if it is raised for the first time on appeal.” (American Continental Ins. Co. v. C & Z Timber Co., supra, 195 Cal.App.3d at p. 1281.) To say that the court impliedly ruled against a stay is unconvincing when the issue was never pursued, even in argument after issuance of the tentative ruling to grant summary judgment. Moreover, the minute order affirmatively reflects that the issue was never reached. It states, after granting summary judgment, “The Motion for Summary Adjudication and Motion to Compel Arbitration are Moot in light of the above ruling.” The issue is accordingly forfeited.[2]
Alternatively, it lacks merit as a matter of law. As with estoppel (pt. III, ante), waiver is ordinarily a question of fact but becomes a question of law where the facts can support only one conclusion. (Maddy v. Castle, supra, 58 Cal.App.3d at pp. 720-721.) “There is no single test for waiver of the *1250 right to compel arbitration, but waiver may be found where the party seeking arbitration has (1) previously taken steps inconsistent with an intent to invoke arbitration, (2) unreasonably delayed in seeking arbitration, or (3) acted in bad faith or with willful misconduct. [Citations.] The moving party’s mere participation in litigation is not enough; the party who seeks to establish waiver must show that some prejudice has resulted from the other party’s delay in seeking arbitration. [Citation.]” (Davis v. Continental Airlines, Inc. (1997) 59 Cal.App.4th 205, 211-212 [69 Cal.Rptr.2d 79]; Sobremonte v. Superior Court (1998) 61 Cal.App.4th 980, 992 [72 Cal.Rptr.2d 43]; Thorup v. Dean Witter Reynolds, Inc. (1986) 180 Cal.App.3d 228, 234-235 [225 Cal.Rptr. 521].)
As a matter of law, plaintiffs’ actions here were so inconsistent with (1) “an intent to invoke arbitration” that we need not examine disjunctive prong (2) or (3). We start by rejecting plaintiffs’ attempts to argue they were misled, had no idea the 1997 agreement might be relied on, discovered contrary true “facts” only when the court delivered its final summary judgment ruling, and reasonably relied on Scott’s “repudiation” of the agreement. We have already held that there was no reasonable reliance on repudiation of the agreement and that Gabriel, far from being misled, admittedly knew or should have known that defendants were relying on the 1997 agreement all along, at least as one alternative. (Pt. III, ante.) Counsel for defendants stated repeatedly that the claims had to be arbitrated and pointedly warned plaintiffs that their insistence on proceeding with the suit would have to be construed as a waiver/“repudiation” of the agreement to arbitrate, and that summary judgment would be sought. Plaintiffs replied bluntly, as late as the 20th of October, that they refused defendants’ “demand to arbitrate,” steadfastly insisting that no agreement bound them. They made no overtures toward arbitration, even through the final summary judgment ruling, and never showed willingness to follow the motion’s alternative suggestion of staying the proceedings and going to arbitration. They also conducted broad-ranging discovery going beyond arbitration issues. In their November 1998 response to Scott’s requests for admissions, they admitted that Gabriel “refuses to arbitrate” his claims and had “failed to demand arbitration” of those claims. Far from showing good faith confusion or ambiguity about which of two arbitration agreements might apply, plaintiffs’ responses unequivocally show a refusal to arbitrate at all, under any agreement. It is hard to imagine a plainer case of waiver from action inconsistent with an intent to invoke arbitration.
There is also requisite evidence of prejudice. Defense Counsel Henry D. Lederman wrote in her letter of October 14: “By maintaining this lawsuit instead of proceeding to arbitration, Plaintiff Gabriel Martinez is depriving *1251 Defendants of the benefit of the arbitration bargain and is breaching the arbitration agreement. As a direct result of the breach, Defendants will be forced to incur attorneys’ fees and costs and thus will be damaged because of the breach.” This was one month into the lawsuit, and plaintiffs persisted for four more, until summary judgment ended the case.
This case differs sharply from Seidman & Seidman v. Wolfson (1975) 50 Cal.App.3d 826 [123 Cal.Rptr. 873], on which plaintiffs rely. Shortly after filing the case the plaintiff there retracted an initial refusal to arbitrate and otherwise showed an intent to maintain the possibility of arbitration. (Id. at pp. 836-837.) Plaintiffs here unequivocally refused to arbitrate and stuck by that position through summary judgment, despite ample discovery on the arbitration issues.
Plaintiffs waived their right to arbitrate as a matter of law and, while perhaps genuinely regretting this now that they find themselves without any recourse against defendants, have themselves to blame for their predicament. (24 Hour Fitness, supra, 66 Cal.App.4th at p. 1216, fn. 12.)
Disposition
The judgment is affirmed.
Haerle, Acting P. J., and Ruvolo, J., concurred.

 Defendants objected to this evidence as irrelevant to whether Gabriel “accepted” the new arbitration agreement, but we will not reach that question.

 Plaintiffs’ counsel did advert in oral comments to his client’s having waived his right and that this “precludes him from filing any claim from arbitrating, from making these claims anywhere,” but this was in conjunction with argument that Scott had made a misleading repudiation, not that the case should be stayed and referred to arbitration.