Filed 8/1/23  Quinn v. Bay Harbor Investment Properties CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| LAWRENCE D. QUINN, et al., | B312947 |
| Plaintiffs and Appellants, | |
| v. | (Los Angeles County Super. Ct. No. BC666284) |
| BAY HARBOR INVESTMENT PROPERTIES, LLC, et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County, Steven J. Kleifield, Judge.  Vacated and remanded with directions.

DiJulio Law Group, R. David DiJulio, and Tiffany Hyatt Krog for Plaintiffs and Appellants.

Law Offices of Craig D. Weinstein and Craig Weinstein for Defendants and Respondents Kenneth Lorenzo and Kevin Lorenzo.

_____

Appellants Lawrence D. Quinn and Olivia Saunders (Quinn/Saunders) each own real property on Thelma Avenue in Los Angeles. Respondents Kenneth Lorenzo and Kevin Lorenzo (the Lorenzos) own real property on Eastern Avenue (the Eastern Property), which they purchased from respondent Bay Harbor Investment Properties (Bay Harbor). Quinn/Saunders' properties abut the Eastern Property. In 2017, Quinn/Saunders sued Bay Harbor and the Lorenzos, claiming that an allegedly faulty retaining wall located on the Eastern Property had caused cracking in Quinn/Saunders' properties.[1] After a seven-day bench trial, the trial court found in favor of Bay Harbor and the Lorenzos and against Quinn/Saunders.

On appeal, Quinn/Saunders contend that, because their properties were being continuously damaged by the ongoing refusal of Bay Harbor and the Lorenzos to repair the retaining wall, the trial court erred (1) in failing to apply section 366 of the Restatement Second of Torts (Section 366); and (2) in finding Bay Harbor and the Lorenzos could not be liable for nuisance or negligence solely because they were not involved with the construction of the retaining wall. We hold that the trial court did not err in not applying Section 366 but did err in determining that Bay Harbor and the Lorenzos could not be liable for nuisance and negligence. We therefore vacate the judgment and remand for further proceedings.

---

[1] Marisela Halachian—apparently the sole member of Bay Harbor—was also named as a defendant but, in a nonpublished August 2020 opinion, we affirmed the trial court's grant of summary judgment in her favor. (*Quinn v. Halachian* (Aug. 28, 2020, B296272).) Bay Harbor has not filed an appellate brief.

# FACTUAL AND PROCEDURAL BACKGROUND

### A.    *The Lawsuit*

In June 2017, Quinn/Saunders filed a complaint.  They declined to include that complaint in the appellate record, but we can discern the gist of the litigation from the parties' trial briefs (which are in the appellate record).

Quinn/Saunders contended in their trial brief that they owned real properties located on Thelma Avenue, and that the Eastern Property was owned by Bay Harbor from July 2016 to July 2017, and by the Lorenzos thereafter.  The western end of Quinn/Saunders' properties abut the eastern end of the Eastern Property.  Quinn/Saunders claimed that, in "late 2016," a retaining wall on the Eastern Property began to crack because Bay Harbor failed to maintain it.  Appellants alleged Bay Harbor also "destroyed the top portion" of the retaining wall. Quinn/Saunders contended the failure to maintain the wall and the removal of the top portion of the wall "caused a subsidence of the earth and soil on" Quinn/Saunders' properties, "as well as the cracking and settlement of the improvements thereon." Appellants stated they had alleged causes of action for "(1) Damages and Permanent Injunction (Removal of Lateral Support), (2) Private Nuisance and (3) Negligence."  For the second and third causes of action, Quinn/Saunders alleged they were suffering "ongoing damages" from the respondents' failure to repair the retaining wall.

Bay Harbor's trial brief claimed that the retaining wall— located in the backyard of the Eastern Property—was in existence when Bay Harbor purchased the Eastern Property. Bay Harbor disagreed with Quinn/Saunders' contention that the wall needed to be replaced, citing a Los Angeles city inspector

3

who had inspected the wall and "concluded that the wall was in good condition and therefore did not need to be replaced, or repaired." Bay Harbor also disputed appellants' claim that its removal of cinder blocks from the top of the retaining wall caused any soil subsidence, and further insisted it had only removed cinder blocks from the portion of the wall abutting Saunders's property—the blocks on top of the wall abutting Quinn's property had fallen off before Bay Harbor purchased the Eastern Property. Bay Harbor further contended the city of Los Angeles had ordered it to remove the cinder blocks. Bay Harbor believed the primary cause of the damage to Quinn/Saunders' properties was the failure to properly grade and compact soil that was added to their properties, which occurred long before Bay Harbor purchased the Eastern Property. Bay Harbor also claimed that any "tilting" of the retaining wall occurred before it purchased the Eastern Property in July 2016, and was not caused by Bay Harbor.

According to the Lorenzos' trial brief, they purchased the Eastern Property from Bay Harbor in July 2017. The Lorenzos disclaimed responsibility for any damages resulting from the failing wall because they had done nothing to cause the wall to fail.

### B.    *Trial and Judgment*

A seven-day court trial began on December 3, 2019, continued through December 6, 2019, resumed one year later on December 14, 2020, and concluded on December 18, 2020. Because no court reporter was present at any portion of the trial, there is no transcript of the trial proceedings.

On December 28, 2020, the court issued a minute order setting forth its tentative decision. The court found

4

Quinn/Saunders had "pursued two theories regarding the wall. First, they claimed that the original cement retaining wall was in disrepair and should have been replaced. Second, they claimed that Defendant Bay Harbor removed the cinder blocks from on top of the wall, thereby lessening the support and causing movement of the structures above, leading to the cracking."

As to the first theory, the court found the wall did not need to be replaced. It cited to the testimony of the "qualified, credible, and unbiased" Los Angeles city inspector, who "did an extensive examination and consulted with other City inspectors" about the wall and concluded that although the wall was " 'cracked and clearly aging, . . . it was largely the same as when it was originally permitted over 70 years ago' " and the city " 'could not determine that it must be replaced or rebuilt.' "

As to the second theory, the court cited the inspector's conclusion that the " 'top courses of block on top of the original wall were clearly added later, had failed and were removed as they should have been.' " The court added that it did not believe that Bay Harbor had removed any cinder blocks abutting Quinn's property. As to the cinder blocks abutting Saunders's property, the court found that those blocks were "loose and not shoring up anything." The court concluded that appellants' theory that removing the cinder blocks had caused the damage was "factually unsupported."

The court noted that Quinn/Saunders' expert witness had attributed the cracking on their properties to " 'long-term rotation' " of the retaining wall and the removal of the cinder blocks. The court reiterated there was no evidence to support the cinder-block-removal theory. As to the long-term rotation theory, the court noted Bay Harbor and the Lorenzos were not

5

"responsible for 'long-term rotation' of the wall. These properties were developed in the late 40's and early 50's. Bay Harbor owned the Eastern property for one year. There is no evidence that anything they did or did not do contributed to 'long-term rotation' of the wall and damage to Plaintiffs' property." The court concluded that "[t]he factual predicates to Plaintiffs' theories were not proved."

The court continued: "Much expert testimony was presented concerning the causes of the cracking on Plaintiffs' properties. Plaintiffs' theory was presented above. Defendant's [*sic*] expert testimony was to the effect that the cracking was due to settling of the structures over the course of many years due to the inadequate grading and compression of the soil in the construction process. Due to the failure of proof on the facts it is unnecessary to reach the issues regarding causation. The Court did, however, find Mr. Farrell's testimony and report to be convincing."[2]

The court noted that Bay Harbor had owned the Eastern Property from July 2016 to July 2017, when it sold the property to the Lorenzos, and "[t]o the extent anything was done or not done before either Defendant took possession of the property, Defendants bear no legal responsibility for it." The court analogized to *Lee v. Takao Building Development Co.* (1985) 175 Cal.App.3d 565 (*Lee*), quoting its holding that " 'a landowner who took title and possession after the occurrence of the act causing the removal of the lateral support, and uncontrovertedly did not

---

[2] Keith Farrell was an expert witness who testified for defendants.

6

participate in the act that resulted in the removal of the support, is not responsible in damages.' "

The minute order ended by saying that "[p]ursuant to CRC 3.1590(c)(4), this tentative decision will become the statement of decision unless, within 10 days after service of this tentative decision, a party specifies those principal controverted issues as to which the party is requesting a statement of decision or makes proposals not included in the tentative decision."[3]  The minute order was served on appellants on December 28, 2020.

On February 8, 2021, the court issued a judgment in favor of Bay Harbor and the Lorenzos and against Quinn/Saunders, in which it noted no party had timely specified controverted issues as to which the party was requesting a statement of decision or made proposals not included in the tentative decision, and therefore the tentative decision had become the statement of decision.[4]  Appellants timely appealed.

------

[3] (Cal. Rules of Court, rule 3.1590(c)(4) ["The court in its tentative decision may: [¶] . . . [¶] (4) Direct that the tentative decision will become the statement of decision unless, within 10 days after announcement or service of the tentative decision, a party specifies those principal controverted issues as to which the party is requesting a statement of decision or makes proposals not included in the tentative decision"].)

[4] On January 14, 2021 (i.e., more than ten days after service of the tentative decision), Quinn/Saunders filed an objection to the tentative decision, but it appears the trial court disregarded this filing.  Appellants have not contended the court erred in doing so.

7

**DISCUSSION**

"When a statement of decision does not resolve a controverted issue, or if the statement is ambiguous and the record shows that the omission or ambiguity was brought to the attention of the trial court . . . prior to entry of judgment . . . , it shall not be inferred on appeal . . . that the trial court decided in favor of the prevailing party as to those facts or on that issue." (Code Civ. Proc., § 634.)  "The clear implication of this provision, of course, is that if a party does not bring such deficiencies to the trial court's attention, that party waives the right to claim on appeal that the statement was deficient in these regards, and hence the appellate court will imply findings to support the judgment."  (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133–1134; see also *SFPP v. Burlington Northern & Santa Fe Ry. Co.* (2004) 121 Cal.App.4th 452, 462 [when statement of decision issued, "a 'party must state any objection to the statement in order to avoid an implied finding on appeal in favor of the prevailing party. . . .  [I]f a party does not bring such deficiencies to the trial court's attention, that party waives the right to claim on appeal that the statement was deficient . . . and hence the appellate court will imply findings to support the judgment' "].)

Here, Quinn/Saunders failed to raise a timely objection to the court's statement of decision.  Thus, where the statement of decision is silent or ambiguous, we imply findings to support the judgment against appellants.

**A.    *Section 366 of the Restatement Second of Torts***

Quinn/Saunders contend the court erred by not applying "Restatement Second of Torts section 366 because Appellants sued for damages to their respective real properties caused by a structure which was unreasonably dangerous to Appellants and

8

which existed on the Eastern Property during the time of its possession by the Respondents, i.e., the deteriorating Retaining Wall" as opposed to a single act that had caused the loss of lateral support.  Section 366 provides:  " 'One who takes possession of land upon which there is an existing structure or other artificial condition unreasonably dangerous to persons or property outside of the land is subject to liability for physical harm caused to them by the condition after, but only after, [para. ] (a) the possessor knows or should know of the condition, and [para. ] (b) he knows or should know that it exists without the consent of those affected by it, and [para. ] (c) he has failed, after a reasonable opportunity, to make it safe or otherwise to protect such persons against it.' " (*Lee*, *supra*, 175 Cal.App.3d at p. 568, fn. 2.)  By its terms, Section 366 applies only when a party takes possession of land upon which there is a structure or condition that is "unreasonably dangerous."

Section 366 is inapplicable because the trial court implicitly rejected the theory that the retaining wall was unreasonably dangerous when it found that it did not need to be replaced.  The court credited the testimony of the "qualified, credible, and unbiased" city inspector, who had concluded the retaining wall was " 'largely the same as when it was originally permitted' " and did not need to be replaced or rebuilt.  While the trial court did not explicitly find that the wall was not unreasonably dangerous, such a finding is consistent with the court's conclusion that the wall did not need to be replaced and, under the doctrine of implied findings, we imply such a finding was made.  If the retaining wall was not unreasonably dangerous, Section 366 is inapplicable.

9

## B. *Nuisance and Negligence*

A plaintiff must prove three elements to establish a cause of action for private nuisance: "First, the plaintiff must prove an interference with its use and enjoyment of its property. Second, the invasion of the plaintiff's interest in the use and enjoyment of the land must be *substantial*, i.e., it caused the plaintiff to suffer substantial actual damage. Third, the interference with the protected interest must not only be substantial, it must also be *unreasonable*, i.e., it must be of such a nature, duration, or amount as to constitute unreasonable interference with the use and enjoyment of the land." (*Today's IV, Inc. v. Los Angeles County Metropolitan Transportation Authority* (2022) 83 Cal.App.5th 1137, 1176.) "The essential elements of a cause of action for negligence are: (1) the defendant's legal duty of care toward the plaintiff; (2) the defendant's breach of duty—the negligent act or omission; (3) injury to the plaintiff as a result of the breach—proximate or legal cause; and (4) damage to the plaintiff." (*Leyva v. Garcia* (2018) 20 Cal.App.5th 1095, 1103.)

While, as discussed above, the trial court did not find the retaining wall was unreasonably dangerous, the court expressly refrained from deciding whether the alleged long-term rotation of the wall was causing cracking on Quinn/Saunders' properties, finding it "unnecessary to reach the issues regarding causation" because neither Bar Harbor nor the Lorenzos were involved in the construction of the retaining wall.[5] Quinn/Saunders contend the court erred in doing so. We agree.

---

[5] Presumably for the same reason, the court also made no findings on whether the cracks sustained by Quinn/Saunders' properties constituted "substantial actual damage" or whether
*(Fn. is continued on the next page.)*

10

"Every successive owner of property who neglects to abate a continuing nuisance upon, or in the use of, such property, created by a former owner, is liable therefor in the same manner as the one who first created it." (Civ. Code, § 3483; see also *Phillips v. Pasadena* (1945) 27 Cal.2d 104, 107–108 [nuisance that "may be discontinued at any time it is considered continuing in character" and "[e]very repetition of a continuing nuisance is a separate wrong for which the person injured may bring successive actions for damages until the nuisance is abated"]; *Sager v. O'Connell* (1944) 67 Cal.App.2d 27, 33 ["[t]he fact that a prior owner was negligent in permitting the bulkhead to decay will not excuse a subsequent owner from a continuing negligence"]; cf. *Turlock v. Bristow* (1930) 103 Cal.App. 750, 754–755 [that appellants did not create continuing public nuisance did not absolve them of responsibility to abate it].)[6]

---

Bay Harbor's and the Lorenzos' refusal to repair the wall was unreasonable.

[6] *Lee*, which the trial court cited, is inapposite. There, the plaintiffs and defendant owned adjoining pieces of real property. (*Lee*, *supra*, 175 Cal.App.3d at p. 567.) Before the defendant purchased its property, a building sitting thereon had been demolished by order of the city. (*Id.* at pp. 567–568.) The plaintiffs sued, alleging "the demolition of the building [on the defendant's property] removed the lateral support of the soil supporting the foundations of their building." (*Id.* at p. 568.) *Lee* affirmed a grant of summary judgment for the defendant, holding that: (1) Section 366 was inapplicable because the plaintiffs failed to establish that "a structure or other artificial condition which was unreasonably dangerous to appellants existed on [defendant] Takao's property during the time of its possession of the property"; and (2) while the plaintiffs were "suing for damage
*(Fn. is continued on the next page.)*

Were the trial court to find that Bay Harbor's and the Lorenzo's failure to repair the retaining wall interfered with Quinn/Saunders' enjoyment of their properties, that the cracks sustained in the properties constituted substantial actual damage, and that Bay Harbor and the Lorenzo's failure to repair the wall was unreasonable, then respondents' lack of involvement with the original construction of the wall would not absolve them of liability for nuisance. Similarly, were the trial court to find that Bay Harbor's and the Lorenzos' failure to repair the retaining wall breached a duty to Quinn/Saunders and caused the cracking on their properties, respondents would be liable for negligence. We therefore conclude the trial court erred in finding that, as a matter of law, neither Bay Harbor nor the Lorenzos could be liable for nuisance or negligence solely because neither respondent was involved in the initial construction of the retaining wall.

## DISPOSITION

The judgment is vacated. On remand, the trial court is to determine whether Quinn/Saunders have proven the elements necessary to recover under their private nuisance and negligence

---

caused by the negligent removal of the foundation wall of the demolished building, which allegedly caused appellants' building to lose its lateral support," the defendant did not remove the foundation. (*Id.* at pp. 568–569.) Here, by contrast, Quinn/Saunders were not seeking to hold Bay Harbor and the Lorenzos liable for the improper construction of the retaining wall, but rather because they alleged respondents' continued failure to repair the wall was causing "ongoing damages" to their properties.

causes of action and issue a new judgment accordingly. Appellants are awarded their costs on appeal.

NOT TO BE PUBLISHED

CHANEY, J.

We concur:

ROTHSCHILD, P. J.

WEINGART, J.